**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEIGTECH EAST BAY LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>LUTRON ELECTRONICS CO., INC.,<br><br>                    Defendant. | No. 1:18-cv-05290-CM<br><br>ECF Case |

**DEFENDANT LUTRON ELECTRONICS CO., INC.'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

**ARNOLD & PORTER KAYE SCHOLER LLP**
James D. Herschlein
Paul C. Llewellyn
Kyle D. Gooch
250 West 55th Street
New York, NY 10019-9710
T:  212.836.8000
F:  212.836.8689
james.herschlein@arnoldporter.com
paul.llewellyn@arnoldporter.com
kyle.gooch@arnold.porter.com

**CARTER ARNETT PLLC**
Scott W. Breedlove (*pro hac vice*)
John S. Torkelson (*pro hac vice*)
8150 North Central Expressway, Suite 500
Dallas, TX 75206
T:  214.550.8188
F:  214.550.8185
sbreedlove@carterarnett.com
jtorkelson@carterarnett.com

*Attorneys for Defendant*
*Lutron Electronics Co., Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND .............................................................................................................. 3

ARGUMENT .................................................................................................................. 4

I.     GeigTech has not shown that it will suffer irreparable injury absent expedited
discovery. ......................................................................................................... 5

       A.    GeigTech's unexplained nine-month delay in filing suit and seeking
preliminary relief confirms that expedition is not needed. ..................... 5

       B.    Even apart from its delay, GeigTech's conclusory assertions are
insufficient on their face to meet its burden of demonstrating irreparable
injury. .................................................................................................. 7

II.    GeigTech has not demonstrated a sufficient probability of success on the merits of
its claims. .......................................................................................................... 7

       A.    GeigTech's patent infringement claim is narrow and unsupported and has
no probability of success.......................................................................... 8

       B.    GeigTech's trade dress infringement claims fail as a matter of law on
multiple grounds. .................................................................................. 13

       C.    GeigTech's unjust enrichment claim is duplicative of its trade dress claim
and fails for the same reasons. .............................................................. 19

III.   GeigTech's proposed discovery requests are overly broad. ............................. 20

CONCLUSION................................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001)...................................................................12

*Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.*,
  909 F. Supp. 896 (S.D.N.Y. 1995) ...............................................................6

*Buonasera v. Honest Co.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016).........................................................19

*Centricut, LLC v. Esab Grp., Inc.*,
  390 F.3d 1361 (Fed. Cir. 2004)...................................................................12

*Century Time Ltd. v. Interchron Ltd.*,
  729 F. Supp. 366 (S.D.N.Y. 1990) ...............................................................6

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*,
  696 F.3d 206 (2d Cir. 2012)........................................................................17

*Citibank, N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir. 1985).........................................................................5

*Citigroup Inc. v. AT&T Inc.*,
  2016 WL 8794472 (S.D.N.Y. July 1, 2016) ..........................................4, 21

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012) .................................................................................19

*Don King Prods., Inc. v. Hopkins*,
  2004 WL 2997800 (S.D.N.Y. Dec. 23, 2004) .........................................5, 20, 21

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006).......................................................................................7

*Gidatex, S.r.L. v. Campaniello Imps., Ltd.*,
  13 F. Supp. 2d 417 (S.D.N.Y. 1998).........................................................5, 6

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
  456 U.S. 844 (1982).....................................................................................14

*Irish Lesbian & Gay Org. v. Giuliani*,
  918 F. Supp. 728 (S.D.N.Y. 1996) .............................................................20

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
    113 F.3d 373 (2d Cir. 1997) .......................................................................................... 14

*Lentjes Bischoff GmbH v. Joy Envtl. Techs., Inc.*,
    986 F. Supp. 183 (S.D.N.Y. 1997) .................................................................................. 5

*Litwin v. OceanFreight, Inc.*,
    865 F. Supp. 2d 385 (S.D.N.Y. 2011) ............................................................................ 20

*Mahoney v. Endo Health Sols., Inc.*,
    2016 WL 3951185 (S.D.N.Y. July 20, 2016) .................................................................. 19

*Major, Lindsey & Africa, LLC v. Mahn*,
    2010 WL 3959609 (S.D.N.Y. Sept. 7, 2010) ................................................................. 6

*Mana Prod., Inc. v. Columbia Cosmetics Mfg., Inc.*,
    65 F.3d 1063 (2d Cir. 1995) .......................................................................................... 16

*Monowise Ltd. Corp. v. Ozy Media, Inc.*,
    2018 WL 2089342 (S.D.N.Y. May 3, 2018) ................................................................. 6

*Notaro v. Koch*,
    95 F.R.D. 403 (S.D.N.Y. 1982) ................................................................................. 4, 5

*P.F. Cosmetique, S.A. v. Minnetonka Inc.*,
    605 F. Supp. 662 (S.D.N.Y. 1985) ................................................................................ 16

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ..................................................................................... 10

*Qualitex Co. v. Jacobson Prod. Co.*,
    514 U.S. 159 (1995) ....................................................................................................... 16

*Ritchie Special Credit Invs., Ltd. v. U.S. Trustee*,
    620 F.3d 847 (8th Cir. 2010) ......................................................................................... 8

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ............................................................................................ 7

*Sara Designs Inc. v. A Classic Time Watch Co.*,
    234 F. Supp. 3d 548 (S.D.N.Y. 2017) ...................................................................... 15, 16

*Tough Traveler, Ltd. v. Outbound Prods.*,
    60 F.3d 964 (2d Cir. 1995) ............................................................................................ 5

*Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
    108 U.S.P.Q.2d 1636, 2013 WL 866867 (S.D.N.Y. 2013) ........................................... 16

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
200 F.3d 795 (Fed. Cir. 1999)................................................................10

*Wal-Mart Stores, Inc. v. Samara Bros.*,
529 U.S. 205 (2000)........................................................................13, 14

*Ward v. Andrews McMeel Pub., LLC*,
963 F. Supp. 2d 222 (S.D.N.Y. 2013)....................................................17

*Yurman Design, Inc. v. PAJ, Inc.*,
262 F.3d 101 (2d Cir. 2001)........................................................13, 14, 15

**Statutes and Rules**

Federal Rules of Civil Procedure

Rule 26(d)(1).........................................................................................4

Rule 26(f)..............................................................................................4

Rule 30(b)(6).......................................................................................20

Lanham Act

15 U.S.C. § 1125(a)...............................................................14, 16, 17

15 U.S.C. § 1125(a)(3)...........................................................................17

Defendant Lutron Electronics Co., Inc. ("Lutron") respectfully submits this memorandum of law in opposition to plaintiff GeigTech East Bay LLC's ("GeigTech") motion for expedited discovery (Dkt. 15).

**PRELIMINARY STATEMENT**

Lutron is a leading innovator and manufacturer of lighting control and window shading products, having pioneered the residential dimmer switch in the 1960s and expanded into motorized window shading solutions by 1993. At an industry trade show in September 2017, Lutron launched a new line of window shading products to match the sleek, modern look of its existing Palladiom brand of lighting, shading, and temperature control products. GeigTech, one of Lutron's competitors, was aware of the launch, and its founder and president twice visited Lutron's booth at the trade show, commenting on the appearance of Lutron's Palladiom products. GeigTech then waited more than ***nine months*** before filing this suit, in which it accuses Lutron of violating GeigTech's purported patent and unregistered trade dress rights in its competing line of window shade products. Without even acknowledging—much less justifying—its lengthy delay, GeigTech only now moves for the extraordinary relief of a preliminary injunction that would force Lutron to pull its Palladiom shading system off the market while this case continues. GeigTech also seeks an order from this Court permitting it to take wide-ranging discovery of Lutron on an expedited basis in connection with its preliminary injunction motion. This Court should deny GeigTech's motion for expedited discovery and this litigation should proceed in the ordinary fashion.

In evaluating whether expedited discovery is appropriate, courts in this Circuit consider whether the movant has shown a risk of irreparable injury and whether that injury is connected to the discovery being sought. Here, GeigTech's unexplained nine-month delay demonstrates that there is no urgency and that GeigTech is not at risk of irreparable injury. Indeed, courts

routinely deny motions for preliminary or expedited relief when the movant's delay is even a fraction of the delay that occurred in this case. And even apart from its delay, GeigTech fails to provide anything more than conclusory assertions that it will suffer irreparable injury.

Courts also look to whether the movant has shown a sufficient probability of success on the merits of its claims before ordering the opposing party to comply with expedited discovery demands. Here, again, GeigTech falls short. Its patent infringement claim has fatal flaws. Despite having many months to prepare, GeigTech's infringement argument—limited to just one type of bracket among the numerous components comprising Lutron's Palladiom shading system—is little more than an attorney's conclusory claim chart. Even as it requests extraordinary relief in the form of a preliminary injunction, GeigTech offers no claim construction, no expert opinion, no disclosure of the claim terms GeigTech had to add by amendment to overcome prior art, and no meaningful explanation of how the accused Lutron bracket could possibly satisfy those critical claim terms.

GeigTech's trade dress infringement claim fares no better. Among other defects, GeigTech fails to adequately articulate the elements of its purported unregistered trade dress, and fails to establish (as it must) that the alleged trade dress has achieved secondary meaning and that it is non-functional. Nor has GeigTech demonstrated that its claimed trade dress is distinctive and that there is any likelihood of confusion between its products and Lutron's products, particularly given the presence of multiple third-party shade brackets on the market that use a clean, modern look. As for GeigTech's unjust enrichment claim, it merely repeats the allegations of trade dress infringement and is not only duplicative of that claim, but is likely to fail for the same reasons.

Finally, GeigTech's proposed discovery requests are facially overbroad and would impose a significant burden upon Lutron at a critical stage of this case. Rather than craft narrowly tailored requests that relate to its preliminary injunction motion, GeigTech seeks to obtain plenary discovery of Lutron on an expedited timeline. The expense and burden that such expedited discovery would place on Lutron is unwarranted at this stage of the case.

## BACKGROUND

GeigTech alleges that its founder and president, James Geiger, invented a "concept" for a system of window roller shades that "allow[s] for screws and wires to be concealed from view." Compl. ¶¶ 10–11. GeigTech is the assignee of U.S. Patent No. 9,237,821, entitled "Assembly for mounting shades." *Id.* ¶ 22. It also claims to own unregistered product configuration trade dress in the combination of three bracket designs—a circular jamb bracket, a U-shaped center bracket, and a U-shaped end bracket. *Id.* ¶¶ 43–44. GeigTech apparently believes that no competitor may offer window roller shades in a "clean" and "minimalist" design, a concept GeigTech claims to have invented. *See* Dkt. 20 at 4–5.[1]

Lutron is a leading innovator and manufacturer of lighting controls and shading systems. In 2015, Lutron launched its Palladiom brand, which features sleek and modern aesthetic options for keypads, thermostats, and other components. In early September 2017, Lutron announced its new Palladiom shading system at the CEDIA Expo trade show in San Diego, California. Compl. ¶¶ 48, 52, 56; Geiger Decl. (Dkt. 12-1) ¶ 26; Pejic Decl. ¶¶ 5–6. Lutron's Palladiom shading system—including a jamb bracket, a center bracket, and an end bracket—were prominently displayed in Lutron's booth, both assembled and as loose parts. Pejic Decl. ¶¶ 7–9. GeigTech's

---

[1] *See also* Breedlove Decl. Ex. 1 (GeigTech press release dated June 19, 2018, announcing this lawsuit and accusing Lutron of "'poach[ing]'" GeigTech's "'simply modern' look").

founder and president, James Geiger, visited Lutron's booth on at least two occasions to view the elements of Lutron's Palladiom shading system and commented on its appearance. *Id.* ¶¶ 10–11.

Also in September 2017, around the same time as the CEIDA Expo trade show, Lutron launched a webpage for the Palladiom shading system, which included images of the products. *Id.* ¶ 6. In October 2017, Lutron added a downloadable brochure and specifications sheet attached to the webpage. *Id.* ¶ 6 & Exs. 1–2.

On June 12, 2018—some nine months after Lutron announced and exhibited its Palladiom products to Mr. Geiger and other attendees at the CEDIA Expo trade show— GeigTech filed this action, alleging that Lutron's Palladiom products infringe GeigTech's purported patent and unregistered trade dress rights. Dkt. 1. A week and a half later, GeigTech served the complaint on Lutron, along with a motion for a preliminary injunction and a motion for expedited discovery. Dkt. 11 & 14.

## ARGUMENT

Rule 26(d)(1) of the Federal Rules of Civil Procedure provides that, with certain exceptions not relevant here, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" unless agreed to by the parties or authorized by court order. In evaluating a motion for expedited discovery, many courts in this District apply the four-factor test set forth in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982):

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Id.* at 405 n.4 (drawing the four-factor test from the law of remedies and noting that they "parallel those showings necessary to obtain a preliminary injunction"); *accord Citigroup Inc. v.*

*AT&T Inc.*, 2016 WL 8794472, *1 (S.D.N.Y. July 1, 2016); *Don King Prods., Inc. v. Hopkins*, 2004 WL 2997800, *2 (S.D.N.Y. Dec. 23, 2004); *Gidatex, S.r.L. v. Campaniello Imps., Ltd.*, 13 F. Supp. 2d 417, 420 (S.D.N.Y. 1998); *Lentjes Bischoff GmbH v. Joy Envtl. Techs., Inc.*, 986 F. Supp. 183, 189 (S.D.N.Y. 1997).  Courts also consider "whether the request is narrowly tailored given the time restraints and whether the movant could have avoided such restraints by acting prior to the request." *Don King*, 2004 WL 2997800, at *2.  Applying these factors here, GeigTech's application falls far short of demonstrating the requisite good cause to obtain expedited discovery.

## I.    GEIGTECH HAS NOT SHOWN THAT IT WILL SUFFER IRREPARABLE INJURY ABSENT EXPEDITED DISCOVERY.

Three of the four *Notaro* factors relate to the movant's irreparable injury.  Because GeigTech has not and cannot demonstrate that it will suffer irreparable injury absent expedited discovery, its motion should be denied.

### A.    GeigTech's unexplained nine-month delay in filing suit and seeking preliminary relief confirms that expedition is not needed.

It is well established in this Circuit that a plaintiff's delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (vacating preliminary injunction due to ten-week delay) (citation omitted).  Indeed, unexplained delay, "standing alone," may "preclude the granting of preliminary injunctive relief" by establishing the lack of irreparable injury.  *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (vacating preliminary injunction due to nine-month delay between when the plaintiff's president admitted to first seeing the allegedly infringing product and when the plaintiff moved for a preliminary injunction).  Courts in this Circuit routinely deny requests for preliminary injunction when the movant's delay demonstrates a lack of irreparable injury.  *See,*

*e.g.*, *Monowise Ltd. Corp. v. Ozy Media, Inc.*, 2018 WL 2089342, *2 (S.D.N.Y. May 3, 2018) (delay of "almost nine months" warranted denial of preliminary injunction motion); *Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.*, 909 F. Supp. 896, 910 (S.D.N.Y. 1995) (three months); *Century Time Ltd. v. Interchron Ltd.*, 729 F. Supp. 366, 369 (S.D.N.Y. 1990) (over two months).

Consistent with these cases, in *Major, Lindsey & Africa, LLC v. Mahn*, 2010 WL 3959609, *1 (S.D.N.Y. Sept. 7, 2010) (McMahon, J.), this Court remarked that it could not "fathom why it should direct discovery to be conducted otherwise than in the ordinary course" after the plaintiff had delayed six months in commencing the action and seeking expedited discovery.  Similarly, in *Gidatex S.r.L. v. Campaniello Imps., Ltd.*, 13 F. Supp. 2d 417, 420 (S.D.N.Y. 1998), the court denied both a motion for a preliminary injunction and a motion for expedited discovery—despite the plaintiff's "reasonably strong" showing on the merits—due to the plaintiff's four-and-a-half-month delay.

Here, GeigTech concedes in its complaint that Lutron announced its Palladiom shading system—including the three brackets to which GeigTech objects—at the September 2017 CEDIA Expo trade show.  Compl. ¶¶ 48, 52, 56; Geiger Decl. ¶ 26.  And, as described above and in the declaration of Lutron's employee, Vladislav Pejic, who was present at the CEDIA Expo show in September 2017, GeigTech's founder and president, James Geiger, visited Lutron's booth at that the show at least twice and observed and commented on the Palladiom shading system.  Pejic Decl. ¶¶ 9–10.  Yet GeigTech waited more than nine months before filing this action and moving for both preliminary relief and expedited discovery.  In its motion papers, GeigTech does not even acknowledge this delay, much less attempt to justify it.  In view of its

unexplained nine-month delay in seeking relief, GeigTech cannot justify its request for urgent relief. Its request for expedited discovery should be denied for this reason alone.

  **B.**  **Even apart from its delay, GeigTech's conclusory assertions are insufficient on their face to meet its burden of demonstrating irreparable injury.**

  A party seeking a preliminary injunction may no longer rely on a categorical presumption of irreparable injury, but "must show that, on the facts of [its] case, the failure to issue an injunction would actually cause irreparable harm." *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–93 (2006). To support its motion for expedited discovery, GeigTech relies upon the allegations of irreparable injury made in support of its motion for a preliminary injunction. *See* Dkt. 20 at 10. There, GeigTech relies on a few paragraphs from Mr. Geiger's declaration, which GeigTech contends shows irreparable injury in the form of lost sales, lost goodwill, and "possibly" price erosion. Dkt. 15 at 23 (citing Geiger Decl. ¶¶ 34–41). Yet, following the trail to Mr. Geiger's declaration yields only vague, conclusory assertions of harm that contain no specific factual details related to this case. *See, e.g.*, Geiger Decl. ¶ 36 ("Indeed, by poaching J Geiger's patented hardware and distinctive trade dress, Lutron's window shade will take market share from J Geiger, dilute the distinctiveness of J Geiger's design, cause J Geiger to lose goodwill associated with its products, and damages the reputation for high quality that J Geiger has labored long and hard to build."). GeigTech cannot meet its burden to show irreparable injury by merely parroting back language from case law in the form of a declaration without any supporting detail.

**II.**  **GEIGTECH HAS NOT DEMONSTRATED A SUFFICIENT PROBABILITY OF SUCCESS ON THE MERITS OF ITS CLAIMS.**

  GeigTech's motion for expedited discovery should be denied for the additional reason that it has failed to carry its burden of demonstrating some probability of success on the merits of its claims.

**A.      GeigTech's patent infringement claim is narrow and unsupported and has no probability of success.**

GeigTech begins its argument for expedited discovery by pointing to its patent, addressing just one of the numerous elements in the Lutron Palladiom shade mounting system:  a jamb bracket.  But its patent infringement argument is baseless.  Despite having many months to prepare its filings for this Court, GeigTech's jamb-bracket patent allegation suffers at least four glaring deficiencies:

1. GeigTech fails to disclose the prosecution history of its patent, in which it was forced to limit both asserted claims by adding the "key" and "pin" requirements.

2. GeigTech fails even to attempt a claim construction of the claim elements containing these critical "key" and "pin" requirements (or any other claim element, for that matter).

3. GeigTech offers only attorney argument in a claim chart—and no expert opinion whatsoever—to somehow link the patent claim elements to the jamb bracket used in Lutron's Palladiom system.

4. Even in the expert-less claim chart, GeigTech's attorney argument effectively skips over the required "key" and "pin" structures, among others.

GeigTech has not done the basic work necessary to file a patent case, much less to come to Court seeking the extraordinary remedies of expedited discovery and a preliminary injunction. Moreover, there is simply no need for expedited discovery given the technology involved. Detailed diagrams and information about Lutron's Palladiom jamb bracket have long been publicly available online (as illustrated by the Complaint) through various Palladiom manuals and guides that describe and illustrate Lutron's shading system, from wall controls to various types of shade brackets to shade motors.  *Cf. Ritchie Special Credit Invs., Ltd. v. U.S. Trustee*, 620 F.3d 847 (8th Cir. 2010) (affirming decision to deny expedited discovery where the underlying issue "can be measured by the publicly available documents").

1.     **The asserted patent claims were narrowed during prosecution in important ways.**

In its Complaint, GeigTech asserts only claim 9 of U.S. Patent No. 9,237,821 (the "'821 patent").  In the claim chart attached to its preliminary injunction motion, it includes claims 9 and 15.  These claims are almost identical, except for their last elements—the "key" term in claim 9, and the "pin" term in claim 15.  Both claims have the following structural elements:

- Two "disk-shaped mounting brackets"

- Each bracket has "a projection configured to hold an end of a tube shade"

- Each bracket has one side configured to bear against a flat surface and one side having "a projection configured to hold an end of a tube shade"

- Each bracket has two recessed apertures to receive a fastener to secure the mounting bracket to the flat surface

The two claims differ only in the final element:

| Claim 9 – final element | Claim 15 – final element |
|---|---|
| wherein the projection of at least one of the mounting brackets is ***configured as a key*** to engage a tube shade clutch or a tube shade motor. | wherein the projection of at least one of the mounting brackets is ***configured to receive a tube shade pin*** or a motorized tube shade idler pin. |

These final elements were added by GeigTech during prosecution in order to get around prior art the Patent Examiner relied on to reject the original claims (claim 7 originally).  That prior art was called the Bohlen patent.  The Patent Examiner explained,

> In regards to claim 7, Bohlen discloses a fastening device system (20) for mounting a roller window shade, comprising: two disk-shaped brackets (26a, 26b), each having one side configured to bear against a flat surface and one side having a projection (48) configured to hold an end of a tube shade, wherein each of the mounting brackets have two recessed apertures (Fig. 2b) therethrough constructed and arranged to receive fastening means (36) to secure the mounting bracket to the flat surface.

Breedlove Decl. Ex. 2 (5/28/2015 Non-Final Rejection) at 5–6.  Thus, the Patent Examiner was aware of prior art right on point.  GeigTech's next act was to amend pending claim 7 (now claim

9) to add the "key" element recited above, and to amend pending claim 22 (now claim 15) to copy pending claim 7 with the addition of the "pin" element recited above.  *See* Breedlove Decl. Ex. 3.

GeigTech fails to mention any of this history even as it comes to this Court seeking equitable relief.  Its failure is particularly inappropriate given that, as shown below, these added claim limitations are not present in the Palladiom jamb bracket.

> ### 2.    GeigTech makes no attempt to construe critical claim elements and glosses over the requirement to compare them to the accused product.

Evaluating infringement requires a two-step inquiry; yet GeigTech's motions skip the first step.  In that first step, a court must determine the scope and meaning of "any disputed terms and limiting expressions in the [patent] claims" as a matter of law.  *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (noting it is a "'bedrock principle' of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude") (citation omitted).

GeigTech offers no claim construction.  And it has no room to argue that it did not realize the "key" and "pin" elements would be disputed claim limitations.  Diagrams and photos from Lutron's Palladiom literature show nothing resembling a "key" projecting from the Palladiom bracket, or the bracket receiving a tube shade "pin."  Again, claim 9 requires the projection "is configured as a key," and claim 15 requires the projection "is configured to receive a tube shade pin."  Yet GeigTech's claim chart identifies the same alleged "projection" of Lutron's jamb bracket for both claims—specifically, the blue structure highlighted in GeigTech's Palladiom claim-chart excerpt below:



*Excerpt from Claim Chart, Dkt. 12-8, at 3 & 9*

In marked contrast, the "key" in the jamb bracket of GeigTech's '821 patent is the little

projection numbered 740 in the patent figures below, showing two views of the bracket:



*Figures 7A & 7B of the '821 Patent*

The patent illustrates a basic "key" that can insert into a similarly-shaped key hole.  And, not

surprisingly, the patent in no way suggests that the same projection that is the "key" could also

be the projection "to receive a tube shade pin."  Rather, to illustrate a projection configured to

receive a pin, Figure 6 of GeigTech's patent shows "a projection (622) having a bore (623)

configured to receive an idler pin."  '821 patent at 5:45-47.  Again not surprisingly, that bore

(item 623 below) seems just the right size and shape—a small hole—to receive a classic "pin":

11



*Figure 6D of the '821 Patent*

Thus, it is readily apparent how the simple jamb brackets in GeigTech's patent include the "key" and "pin" elements:  Figure 7 illustrates the first type of GeigTech bracket with a "key," and Figure 6 illustrates the second type of GeigTech bracket configured to receive a "pin." GeigTech's claim chart leaves it a mystery, however, as to how Lutron's jamb bracket—having a completely different structure than GeigTech's jamb brackets—could possibly satisfy either element, much less both elements simultaneously.

Given this technological mystery, GeigTech's failure to offer expert testimony is conspicuous.  *Cf. Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1369–70 (Fed. Cir. 2004) ("In other areas of the law courts have held that relevant expert testimony regarding matters beyond the comprehension of laypersons is sometimes essential.  Expert testimony may be similarly important in patent cases involving complex technology such as this one.") (footnote omitted).  With or without expert testimony, though, GeigTech cannot show any probability of success on the merits of its patent infringement claim.  *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001) ("If [defendant] raises a substantial question concerning either infringement or validity, *i.e.*, asserts an infringement or

invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue.")

In short, there is no reason to treat GeigTech's patent case more favorably than any other patent case in this Court.  Instead, the case should proceed under this Court's usual procedures: addressing claim construction first, and only then being considered for discovery.  Indeed, Lutron respectfully submits that the claim construction process, in combination with publicly available detail about the Palladiom jamb bracket, will confirm GeigTech's patent case should be dismissed as a matter of law.

**B.    GeigTech's trade dress infringement claims fail as a matter of law on multiple grounds.**

Trade dress rights are intended to promote competition and protect consumers by protecting distinctive marks and designs, thereby preventing confusion as to the source of a producer's goods.  But as both the Supreme Court and Second Circuit have recognized, attempts to claim expansive trade dress rights—particularly where the alleged trade dress consists of a product design—have the opposite effect, stifling competition and limiting consumer choice. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211 (2000) ("Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves ….."); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001) ("[T]rade dress claims raise a potent risk that relief will impermissibly afford a level of 'protection that would hamper efforts to market competitive goods.'") (citation omitted). Courts have therefore "exercise[d] particular caution when extending [trade dress] protection to product designs," recognizing that often "even the most unusual of product designs … [are] intended not to identify the source of the product, but to render the product itself more useful or more appealing."  *Id.* at 114–15 (internal punctuation omitted).

Consistent with these principles, where, as here, a plaintiff is seeking to protect an unregistered product design trade dress under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), it must plead and prove that (1) the design has achieved secondary meaning[2]; (2) the design is non-functional; and (3) there is a likelihood of confusion between the parties' goods. *Yurman Design*, 262 F.2d at 115.  And particularly where, as here, the plaintiff is seeking to protect a trade dress in an entire product line, it has the burden to "articulate the design elements that compose the trade dress." *Id.* at 116.  GeigTech's trade dress infringement claim fails on all of these fronts.

**First**, GeigTech fails to adequately articulate its purported trade dress.  GeigTech defines its trade dress as a combination of a (i) a jamb bracket with a "clean circular element that is integral and seamless with both the shade and the wall"; (ii) a "U-shaped" center bracket that "fits seamlessly between two shade ends that abut the same"; and (iii) a "U-shaped" end bracket that "stands alone in its ornamental connection of the end of the shade to the wall."  Geiger Decl. ¶¶ 17, 18, 20, 22.  Putting aside the functional aspects of this description—which describe the placement of the brackets relative to the wall or the shade, and describe a "minimalist" aesthetic design that GeigTech itself describes as being particularly desired by customers and that is therefore also functional—all GeigTech has articulated is the vague concept of combining modern-looking circular and U-shaped brackets together.  But trade dress does not protect "an idea, a concept, or a generalized type of appearance." *Yurman Design*, 262 F.3d at 115 (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997)).  And courts in this district have routinely dismissed product design trade dress infringement claims where, as

---

[2] Secondary meaning is achieved when, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" *Wal-Mart*, 529 U.S. at 211 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)).

here, the plaintiff has not articulated its trade dress with precision.  *See, e.g.*, *Sara Designs Inc. v. A Classic Time Watch Co.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017) (dismissing trade dress infringement claim where the complaint "fail[ed] to articulate the precise nature of the trade dress" and contained only "a high level description of features of several watches … without allegations as to whether and how those features are distinctive").

**Second**, GeigTech fails to establish that its purported trade dress has achieved secondary meaning—*i.e.*, that "in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001).  Although the burden to establish secondary meaning in a product configuration trade dress is particularly high, the single paragraph about secondary meaning in GeigTech's memorandum of law contains only conclusory statements, parroting back the legal standard for secondary meaning with no factual detail.  *See* Dkt. 15 at 11–12.  As evidence, GeigTech cites nothing except for a few paragraphs in Mr. Geiger's declaration, which contain (1) an unsupported assertion that GeigTech's products are widely recognized in the industry; (2) the year-over-year percentage increases in GeigTech's sales for the last three years, without any actual sales numbers at all; and (3) an assertion that GeigTech has spent $1.2 million in advertising over three years for its entire product line, without any evidence of how that advertising relates to the claimed trade dress of the specific products at issue.  *See* Dkt. 12-1, Geiger Decl. ¶¶ 12–14.  GeigTech offers no consumer survey, no third-party declarations, no evidence of its actual sales, and no evidence of advertising spend specifically relating to its claimed trade dress.  On its face, GeigTech's proffered evidence is insufficient as a matter of law to demonstrate that purchasers have come to view the design of GeigTech's products as an indicator of source.

In addition, GeigTech's advertising must be disregarded because it "promotes the functional advantages of [the] product and does not call attention to the design details alleged to be non-functional" and thus "provides little if any evidence of secondary meaning." *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, 108 U.S.P.Q.2d 1636, 2013 WL 866867, *4 (S.D.N.Y. 2013); *see* Geiger Decl. ¶ 14 & Ex. 1 at 1 ("No Valances–No Fascias–No Ceiling Pockets–No Visible Screws"); *id.* Ex. 1 at 1 ("eliminate the need to hide your roller shades"; "form meets function").  Even if fully credited, however, GeigTech's evidence is insufficient as a matter of law to establish secondary meaning.  *See Mana Prod., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1071 (2d Cir. 1995) (holding that $3 million in advertising and an affidavit of a third-party customer was insufficient); *Sara Designs Inc. v. A Classic Time Watch Co.*, 234 F. Supp. 3d 548, 555–56 (S.D.N.Y. 2017) (dismissing claim for trade dress infringement where the complaint contained only conclusory allegations of secondary meaning); *P.F. Cosmetique, S.A. v. Minnetonka Inc.*, 605 F. Supp. 662, 672– 73 (S.D.N.Y. 1985) (holding that $5 million in cumulative advertising and $6 million in cumulative sales for the entire product line was insufficient).  Moreover, given the number of generally similar minimalist designs for shade brackets in the market, as shown below, this paucity of evidence is particularly insufficient to show that GeigTech's claimed trade dress is distinctive.

**Third**, GeigTech fails to make an affirmative showing that its purported trade dress is non-functional.  "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature."  *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 164 (1995).  Congress amended the Lanham Act to require, in cases involving an unregistered trade dress, that the plaintiff bear "the burden of proving that the matter sought to be

protected is not functional." 15 U.S.C. § 1125(a)(3).  As noted above, GeigTech's own advertisements and its filings in this case tout the functional benefits of its purported trade dress, including that the design eliminates the need for valances, fascias, ceiling pockets, and visible screws.

Even apart from utilitarian functionality, however, GeigTech's purported trade dress plainly has aesthetic functionality.  As the Second Circuit has explained, "a mark is aesthetically functional, and therefore ineligible for protection under the Lanham Act, where protection of the mark significantly undermines competitors' ability to compete in the relevant market." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 222 (2d Cir. 2012); *see also Ward v. Andrews McMeel Pub., LLC*, 963 F. Supp. 2d 222, 238 (S.D.N.Y. 2013).  Here, as described above, GeigTech's vague and overly broad formulation of its purported trade dress would encompass any combination of circular and U-shaped brackets that use the "clean lines and minimalist style" that GeigTech purports to reserve for itself.  Dkt. 15 at 2.  GeigTech's only response is that "[o]ther designs for [the] brackets existed prior to the creation of [GeigTech's] bracket that accomplished the purpose of holding shades in place."  Geiger Decl. ¶¶ 19, 21, 23.  But that is not the test.  The question is whether granting GeigTech a monopoly on its "clean" and "minimalist" design would significantly harm competition.  And it plainly would:  Lutron and third-party competitors would be barred from introducing their own clean, minimalist window shade designs, which GeigTech itself concedes are desired by purchasers, thereby harming competition and reducing consumer choice.

*Fourth*, GeigTech fails to demonstrate a likelihood of confusion among prospective purchasers.  GeigTech presents no consumer survey evidence supporting a likelihood of confusion, and its purported evidence of "actual confusion" (*see* Dkt. 15 at 16) is mere evidence

17

of association, not confusion as to source.  And as GeigTech admits, the parties' respective products are high-end products that are sold through distributors, lessening the possibility of confusion.  To the extent that GeigTech's trade dress is protectable at all, it is extremely weak given the lack of distinctiveness in its design and the lack of any evidence that it is viewed as a source-identifier by the public.  Indeed, the lack of distinctiveness of GeigTech's design, and the extremely low likelihood that Lutron's designs would cause any confusion, are demonstrated by third-party use of designs that are generally similar to GeigTech's shade brackets (*see* Pejic Decl. ¶ 12):



| GeigTech End Bracket (Compl. ¶ 11) | Third Party Products | |
|---|---|---|
| | Coulisse | The Shade Store |
| | Hunter Douglas | Crestron |

For these reasons, GeigTech's trade dress infringement claim will fail on the merits for multiple reasons—none of which depend on whether GeigTech can obtain documents or testimony from Lutron on an expedited basis.

### C.   GeigTech's unjust enrichment claim is duplicative of its trade dress claim and fails for the same reasons.

Under New York law, "unjust enrichment is not a catchall cause of action to be used when others fail.  It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  Thus, unjust enrichment is unavailable "where it simply duplicates, or replaces, a conventional contract or tort claim."  *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016) (internal quotation marks omitted) (dismissing unjust enrichment claim as duplicative); *see also Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) (same).

Here, GeigTech's third cause of action for unjust enrichment is duplicative of its trade dress infringement claim because it is predicated on the same factual allegations.  *See* Compl. ¶ 62 (alleging that Lutron "is wrongfully using J Geiger's trade dress and/or colorable imitations thereof"); *id.* ¶ 63 ("J Geiger's trade dress is entitled to protection under the common law.").  GeigTech gains no benefit to repackaging its claim under a new label.  GeigTech's unjust enrichment claim is subject to dismissal both because it is duplicative of the trade dress infringement claim and because it suffers from the same underlying flaws as the trade dress infringement claim.

III.   **GEIGTECH'S PROPOSED DISCOVERY REQUESTS ARE OVERLY BROAD.**

As noted above, "whether the request is narrowly tailored given the time restraints" is one of the factors considered by courts in this District when confronted with a motion for expedited discovery. *Don King*, 2004 WL 2997800, at *2. Where the movant has failed to narrowly tailor its requests, courts have not hesitated to deny expedited discovery. *See, e.g.*, *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 402 (S.D.N.Y. 2011) ("The sheer volume and breadth of plaintiff's discovery requests further renders them unreasonable, and plaintiff has offered no concrete basis whatsoever to justify expedited discovery."); *Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728, 731 (S.D.N.Y. 1996) ("[T]he plaintiff's discovery request is a broadside not reasonably tailored to the time constraints under which both parties must proceed or to the specific issues that will have to be determined at the preliminary injunction hearing.")

GeigTech's proposed document requests are overbroad on their face. Of the 22 requests, 17 demand the production of "[a]ll documents and things" related to a particular subject matter, including all documents about the creation of Lutron's Palladiom shading system, and all documents about training materials, marketing materials, design specifications, manufacturing drawings, sales projections, and instructions to salespersons and distributors." *See* Dkt. 21-1, RFP Nos. 1, 3–18. GeigTech even asks for "[a]ll documents concerning any defenses or counterclaims that Lutron has or will assert in response to [the complaint]" before Lutron has asserted them. *Id.*, RFP No. 19. And GeigTech requests virtually every document Lutron has concerning GeigTech, its founder, and its products. *Id.*, RFP Nos. 1–2. GeigTech even requests that Lutron produce publicly available documents from Lutron's social media accounts and website forums. *Id.*, RFP No. 1. And in addition to these broad document requests, GeigTech seeks a Rule 30(b)(6) deposition of Lutron on an undisclosed list of topics.

As is evident on the face of these requests, GeigTech has not "narrowly tailored" its proposed requests, *Don King Productions*, 2004 WL 2997800, at *2, but rather intends to seek extensive document discovery from Lutron on nearly every aspect of this case over a 21-day period in addition to preparing a corporate designee to testify on topics of unknown number and breadth. What is more, GeigTech never explains why it needs such expansive discovery in connection with its preliminary injunction motion, which it has already filed. Indeed, "[t]he fact that plaintiff has moved for a preliminary injunction indicates … that it believes that the information it has attached to its motion is adequate to prevail." *Citigroup*, 2016 WL 8794472, at *1. For these reasons, any potential benefit to conducting expedited discovery is substantially outweighed by the burden that would be placed on Lutron in responding to GeigTech's facially overbroad requests, which would cause an undue burden to Lutron at this stage of the litigation. *See id.* at *2.

## CONCLUSION

For the foregoing reasons, GeigTech's motion for expedited discovery should be denied.

Dated:  July 13, 2018

Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

By:   */s/ James D. Herschlein*
James D. Herschlein
Paul C. Llewellyn
Kyle D. Gooch
250 West 55th Street
New York, NY 10019-9710
T:  212.836.8000
F:  212.836.8689
james.herschlein@arnoldporter.com
paul.llewellyn@arnoldporter.com
kyle.gooch@arnold.porter.com

Scott W. Breedlove (*pro hac vice*)
John S. Torkelson (*pro hac vice*)
**CARTER ARNETT PLLC**
8150 North Central Expressway, Suite 500
Dallas, TX 75206
T:  214.550.8188
F:  214.550.8185
sbreedlove@carterarnett.com
jtorkelson@carterarnett.com

*Attorneys for Defendant*
*Lutron Electronics Co., Inc.*