**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GEIGTECH EAST BAY LLC,

               Plaintiff,

      v.

LUTRON ELECTRONICS CO., INC.,

               Defendant.

No. 1:18-cv-05290-CM

ECF Case

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT LUTRON ELECTRONICS CO., INC.'S MOTION**
**TO DISMISS COUNTS II AND III FOR FAILURE TO STATE A CLAIM**

**ARNOLD & PORTER KAYE SCHOLER LLP**
James D. Herschlein
Paul C. Llewellyn
Kyle D. Gooch
250 West 55th Street
New York, NY 10019-9710
T:  212.836.8000
F:  212.836.8689
james.herschlein@arnoldporter.com
paul.llewellyn@arnoldporter.com
kyle.gooch@arnoldporter.com

**CARTER ARNETT PLLC**
Scott W. Breedlove (*pro hac vice*)
John S. Torkelson (*pro hac vice*)
8150 North Central Expressway, Suite 500
Dallas, TX 75206
T:  214.550.8188
F:  214.550.8185
sbreedlove@carterarnett.com
jtorkelson@carterarnett.com

*Attorneys for Defendant*
*Lutron Electronics Co., Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................ 1

FACTS ALLEGED IN THE COMPLAINT ........................................................................... 2

ARGUMENT .......................................................................................................................... 3

I.      Count II should be dismissed because GeigTech fails to allege facts
demonstrating that it owns a distinctive, nonfunctional trade dress. ................................ 3

      A.      GeigTech's complaint does not articulate elements that constitute a
protectable trade dress ....................................................................................... 3

      B.      GeigTech fails to adequately plead facts that would establish that its
purported trade dress has achieved secondary meaning. ....................................... 7

      C.      GeigTech fails to adequately allege that its trade dress is nonfunctional. ............ 10

II.     Count III of GeigTech's complaint, which asserts a common-law claim for either
"unjust enrichment" or "unfair competition," fails for the same reasons as
GeigTech's Lanham Act claim. ......................................................................................... 14

CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bubble Genius LLC v. Smith,*
239 F. Supp. 3d 586 (E.D.N.Y. 2017) ..........................................................7, 10, 14

*Buonasera v. Honest Co.,*
208 F. Supp. 3d 555 (S.D.N.Y. 2016)..................................................................15

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.,*
696 F.3d 206 (2d Cir. 2012)..................................................................................11

*Cicena, Ltd. v. Columbia Telecomms. Grp.,*
900 F.2d 1546 (Fed. Cir. 1990).............................................................................10

*Corsello v. Verizon N.Y., Inc.,*
18 N.Y.3d 777 (2012) ............................................................................................15

*DO Denim, LLC v. Fried Denim, Inc.,*
634 F. Supp. 2d 403 (S.D.N.Y. 2009)...................................................................11

*Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC,*
2011 WL 6600267 (S.D.N.Y. Dec. 22, 2011), *aff'd*, 507 F. App'x 74 (2d Cir.
2013) ......................................................................................................................14

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,*
58 F.3d 27 (2d Cir. 1995).............................................................................3, 4, 14

*Landscape Forms, Inc. v. Columbia Cascade Co.,*
113 F.3d 373 (2d Cir. 1997)....................................................................................4

*Mahoney v. Endo Health Sols., Inc.,*
2016 WL 3951185 (S.D.N.Y. July 20, 2016) .......................................................15

*Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.,*
65 F.3d 1063 (2d Cir. 1995)................................................................................7, 8

*P.F. Cosmetique, S.A. v. Minnetonka Inc.,*
605 F. Supp. 662 (S.D.N.Y. 1985) .........................................................................8

*Qualitex Co. v. Jacobson Prod. Co.,*
514 U.S. 159 (1995)...............................................................................................10

*Sara Designs Inc. v. A Classic Time Watch Co.,*
234 F. Supp. 3d 548 (S.D.N.Y. 2017)..................................................................6, 8

*Thompson v. V.E.W. Ltd, Coty, Inc.*,
   2007 WL 1746739 (S.D.N.Y. June 15, 2007) ..........................................................6

*Tracey Tooker & TT Ltd. v. Whitworth*,
   212 F. Supp. 3d 429 (S.D.N.Y. 2017)................................................................5, 6

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23 (2001)..............................................................................................11, 12

*Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
   108 U.S.P.Q.2d 1636, 2013 WL 866867 (S.D.N.Y. 2013).....................................9

*Vedder Software Grp. Ltd. v. Ins. Servs. Offices, Inc.*,
   2013 WL 12121098 (N.D.N.Y. Mar. 22, 2013), *aff'd*, 545 F. App'x 30 (2d
   Cir. 2013) ................................................................................................................9

*Waddington N. Am. Bus. Tr. v. EMI Plastics, Inc.*,
   2002 WL 2031372 (E.D.N.Y. Sept. 5, 2002) ........................................................14

*Wal-Mart Stores, Inc. v. Samara Bros.*,
   529 U.S. 205 (2000)...............................................................................................7

*Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*,
   916 F.2d 76 (2d Cir. 1990).................................................................................12, 13

*Yurman Design, Inc. v. PAJ, Inc.*,
   262 F.3d 101 (2d Cir. 2001)...........................................................................4, 10, 11

**Statutes and Rules**

15 U.S.C. § 1125(a) ......................................................................................................3, 7, 10

15 U.S.C. § 1125(a)(3)....................................................................................................10

Federal Rules of Civil Procedure Rule 12(b)(6) .......................................................1, 16

Defendant Lutron Electronics Co., Inc. ("Lutron") respectfully submits this memorandum in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts II and III of plaintiff GeigTech East Bay LLC's ("GeigTech") complaint for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

By attempting to claim rights in the vague concept of window shading brackets in a "clean," "simple," and "modern" design, GeigTech is trying—as it admits—to use this case "to exclude others from the high-end exposed roller shade market." Dkt. 15 at 8. While the candor in GeigTech's admission is appreciated, GeigTech's approach to trade dress cannot be squared with the Second Circuit's approach. Multiple trade-dress doctrines guard against exactly such anticompetitive litigation, particularly where the plaintiff relies on alleged unregistered trade-dress rights based on product design. A plaintiff asserting such rights must articulate the particular features of the claimed trade dress with specificity and can never rely on inherent distinctiveness (as GeigTech attempted in its preliminary injunction motion, *id.* at 10–12). Moreover, there is a statutory presumption that product design is functional, and the burden is on GeigTech to allege facts showing it is not. By relying in its complaint on vague and broad descriptions of its purported trade dress and on advertising touting its design's functional advantages, and by repeatedly alleging that its claimed "modern" design is highly desired by consumers, GeigTech confirms this case is no exception to the rules.

Despite GeigTech's claims that it invented, and now owns exclusive rights to, the concept of a window roller shades with "clean," "simple," and "[m]odern" looking brackets (Compl. (Dkt. 1) ¶ 45), Lutron and other competitors are free to innovate and create their own roller shades with clean, modern designs. GeigTech's claims for trade dress infringement and common-law unfair competition fail as a matter of law for at least three reasons.

1

First, GeigTech fails to adequately articulate the elements of its purported trade dress, and instead seeks to exclude competition with a vague description of claimed rights that leaves Lutron with no meaningful idea of the specific trade dress GeigTech claims.  As the Supreme Court and the Court of Appeals have recognized, trade dress rights in product designs must be carefully circumscribed so as not to limit competition and harm consumer choice.  No company can own trade dress rights in a vague idea or concept.  Rather, these rights stem only from specific combinations of elements that serve as indicators of source, and a party asserting such rights must specifically identify the particular features of its claimed trade dress.  GeigTech's vague, overly broad specification of its trade dress is insufficient as a matter of law.

Second, GeigTech fails to plead facts that raise a plausible inference that its purported trade dress has achieved secondary meaning.  GeigTech merely alleges that it has sold its products for four years and has spent a total of $1.2 million on marketing its entire product line over a three-year period.  It presents no sales figures, no consumer surveys, no evidence of unsolicited media coverage, and no evidence of prior attempts to plagiarize its design.  In short, GeigTech's allegations are insufficient as a matter of law to plead secondary meaning.

Finally, GeigTech fails to meet its burden to plead facts demonstrating that its purported trade dress is nonfunctional.  Its own complaint and the advertisements attached to the complaint repeatedly tout the utilitarian and aesthetic functionality of GeigTech's "simple" and "modern" design.  As a matter of law, these functional elements are ineligible for trade dress protection, which leaves Lutron and other competitors free to innovate their own window shading products that feature clean, modern aesthetics.

### FACTS ALLEGED IN THE COMPLAINT

GeigTech claims to own unregistered product configuration trade dress in the combination of three bracket designs—a circular jamb bracket, a U-shaped center bracket, and a

U-shaped end bracket.  Compl. (Dkt. 1) ¶¶ 43–45, 49, 53.  GeigTech describes this combination of circular and U-shaped brackets as its "signature look."  *Id.* ¶ 14.  GeigTech apparently believes that no competitor may offer window roller shades in a "clean" and "minimalist" design, a concept GeigTech claims to have invented.  *See* Dkt. 20 at 4–5.

Lutron is a leading innovator and manufacturer of lighting controls and shading systems. In early September 2017, Lutron announced its new Palladiom shading system at the CEDIA Expo trade show in San Diego, California.  Compl. (Dkt. 1) ¶¶ 48, 52, 56.  The complaint alleges that Lutron "copied" GeigTech's designs for the jamb, center, and end brackets.  *Id.*

## ARGUMENT

### I.  COUNT II SHOULD BE DISMISSED BECAUSE GEIGTECH FAILS TO ALLEGE FACTS DEMONSTRATING THAT IT OWNS A DISTINCTIVE, NONFUNCTIONAL TRADE DRESS.

Count II of GeigTech's complaint asserts a claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), based on Lutron's alleged infringement of GeigTech's unregistered trade dress rights in the configuration of its products.  *See* Compl. (Dkt. 1) ¶¶ 41–59.  This claim fails as a matter of law for three separate and independent reasons:  (a) GeigTech fails to articulate, as it must, the specific elements of its purported trade dress; (b) GeigTech fails to allege sufficient facts which, if true, would establish secondary meaning; (c) GeigTech fails to plead facts establishing that its purported trade dress is nonfunctional.

#### A.  GeigTech's complaint does not articulate elements that constitute a protectable trade dress.

A seller cannot use trademark law to exclude its competitors from offering products with the same generalized appearance as its own.  As the Second Circuit has explained, "just as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance."  *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995).  Thus, trade dress serves "to protect an

owner of a dress in informing the public of the source of its products, without permitting the owner to exclude competition from functionally similar products." *Id.* at 33. "The level of generality at which a trade dress is described, as well as the fact that a similar trade dress is already being used by manufacturers of other kinds of products, may indicate that that dress is no more than a concept or idea to be applied to particular products." *Id.*

Where the purported trade dress is a product design, the Second Circuit instructs courts to "exercise particular caution [because] almost invariably, even the most unusual of product designs … is intended not to identify the source of the product, but to render the product itself more useful or ***more appealing***. And trade dress claims raise a potent risk that relief will impermissibly afford a level of protection that would hamper efforts to market competitive goods." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114–15 (2d Cir. 2001) (internal quotation marks and citations omitted) (emphasis added). Accordingly, a plaintiff asserting trade dress infringement "must articulate the design elements that compose the trade dress." *Id.* at 116; *see also Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997). As the Second Circuit has explained, such a precise articulation of the elements of the purported trade dress is necessary to allow the Court to "winnow[] out claims that are overbroad as a matter of law," to evaluate secondary meaning and nonfunctionality, and to "'shape narrowly-tailored relief.'" *Yurman Design*, 262 F.3d at 117 (quoting *Landscape Forms*, 113 F.3d at 381).

Here, GeigTech owns no federal trademark registration covering its product design. In its complaint, GeigTech states that its trade dress "includes" (1) its jamb bracket, (2) its center bracket, and (3) its end bracket. Compl. (Dkt. 1) ¶ 44. The complaint describes each of the brackets as having a "pretty," "simple," or "[s]imply [m]odern" appearance—i.e., being ***more***

*appealing* in appearance.  *Id.* ¶¶ 45, 49, 53.  The jamb bracket allegedly has "a clean circular element that is integral and seamless with both the shade and the wall."  *Id.* ¶ 45.  The center bracket allegedly has "a clean, U-shaped element, where the U-shaped element fits seamlessly between two shade ends that abut the same, effectively creating a 'shade sandwich' with the U-shaped element in the middle."  *Id.* ¶ 49.  And the end bracket has "a clean U-shaped element that stands alone in its ornamental connection of the end of the shade to a wall, where the outward face side of the U-shaped element[.]"  *Id.* ¶ 53.

On its face, GeigTech's description of its trade dress includes functional aspects of the design, including (1) a description of the placement of the brackets relative to the wall or the shade, including a "seamless" fit that provides the obvious functional benefit of eliminating light gaps between shades or between the shade and the wall; and (2) a description of a "pretty," "simple," "minimalist" and "modern" aesthetic design, which, as explained below, is aesthetically functional because it would preclude Lutron and other competitors from offering aesthetic options that GeigTech itself describes as being particularly desired by customers. Putting aside these functional aspects, all GeigTech has articulated is the vague concept of combining modern-looking circular and U-shaped brackets together.  The lack of specifics in the description renders the purported trademark overbroad on its face:  GeigTech is describing a trade dress at such a high level of generality that it constitutes an unprotectable idea or concept rather than a concrete set of features that have acquired distinctiveness.

Courts in this district have repeatedly found descriptions of purported trade dress that are even more detailed than GeigTech's to be insufficient as a matter of law.  For example, in *Tracey Tooker & TT Ltd. v. Whitworth*, 212 F. Supp. 3d 429 (S.D.N.Y. 2017), the plaintiff hat maker's complaint contained "numerous photos of her hats," and claimed a trade dress in the "unique

elements of style, shape, angle, height, width and/or slant" of each hat.  *Id.* at 434.  The court held that it could not "distill the distinctive elements" of the plaintiff's designs from her photos and "sweeping descriptions."  *Id.*  Likewise, in *Sara Designs Inc. v. A Classic Time Watch Co.*, 234 F. Supp. 3d 548 (S.D.N.Y. 2017), the plaintiff jewelry designer sued a competitor for allegedly infringing its unregistered trade dress in a series of watch designs.  The court dismissed the trade dress infringement claim because the plaintiff failed "to articulate the precise nature of [its] trade dress" and its complaint merely contained "a high level description of features of several watches, such as 'gradient chain,' 'lobster claw closure,' and 'leaf-shaped logo,' without allegations as to whether and how those features are distinctive."  *Id.* at 555.  And in *Thompson v. V.E.W. Ltd, Coty, Inc.*, 2007 WL 1746739 (S.D.N.Y. June 15, 2007), the plaintiff alleged that she "created crowns by 'weaving and molding gold and silver wire into forms that she adorns with jewels'" and that "no other designer creates crowns with a similar appearance."  *Id.* at *1. The court dismissed the plaintiff's trade dress infringement claim because the complaint did not contain "an adequate articulation of a distinctive trade dress."  *Id.* at *3.

As these cases demonstrate, it is not sufficient for GeigTech to describe its trade dress as a combination of a circular jamb bracket with U-shaped center and end brackets, all in a "pretty," "simple," and "modern" look.  This vague, overbroad description fails to put either the Court or Lutron on sufficient notice of the specific combination of elements in which GeigTech is claiming rights.  Indeed, from this description, Lutron has no idea what designs would be "acceptable" to GeigTech that would permit Lutron to compete.  For this reason alone, its trade dress infringement claim should be dismissed.

**B.**    **GeigTech fails to adequately plead facts that would establish that its purported trade dress has achieved secondary meaning.**

A trade dress must be distinctive in order to be protectable under Section 43(a) of the

Lanham Act. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210 (2000).  Where, as here,

the purported trade dress consists of a product design, the Supreme Court has held that, as a

matter of law, such a trade dress cannot be inherently distinctive.  *See id.* at 212–16.  Rather, a

product design trade dress is protectable only "if it has developed secondary meaning, which

occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the

source of the product rather than the product itself.'"  *Id.* at 211 (quoting *Inwood Labs., Inc. v.

Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)).  In requiring that a plaintiff plead and prove

secondary meaning in product design cases, the Supreme Court was motivated in part by the

need for a legal standard that allowed for "summary disposition of an anticompetitive strike

suit," noting that competition would be deterred by the mere threat of a successful suit over what

might ultimately be a design that is not source-identifying.  *Id.* at 214.

To avoid a dismissal at the pleading stage, the plaintiff must "allege facts that would

support a plausible inference that its trade dress has acquired a secondary meaning."  *Bubble

Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598 (E.D.N.Y. 2017).  In determining whether a

mark has acquired secondary meaning, courts consider the following factors:  "(1) advertising

expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage

of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and

exclusivity of the mark's use."  *Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d

1063, 1071 (2d Cir. 1995).

Here, GeigTech's complaint is devoid of any allegations concerning consumer surveys,

unsolicited media coverage of the design, actual sales figures, or prior attempts to plagiarize

GeigTech's design. The allegations in GeigTech's complaint address only two of the secondary meaning factors: advertising expenditures and length of use. As for advertising expenditures, GeigTech alleges that it spent $1.2 million in marketing over a three-year period for its entire product line. *See* Compl. (Dkt. 1) ¶¶ 18–19, 43, 46, 50, 54. But it fails to identify how or where that money was spent, and specifically how much of it was spent on public-facing advertising that emphasized or featured its purported trade dress. And as for length of use, GeigTech alleges that its founder first advertised the concept of its product in 2012 and that GeigTech first began selling the products in 2014. *Id.* ¶¶ 13, 16. But while it maintains that its product was innovative, GeigTech fails to allege exclusivity, *i.e.*, that no other third party has introduced any product featuring the design elements that constitute its purported trade dress.[1]

At bottom, GeigTech merely alleges that it has sold its product design for four years and that it has spent $1.2 million cumulatively on advertising. Even if fully credited, these allegations are insufficient as a matter of law to create a plausible inference that its purported trade dress has achieved secondary meaning—*i.e.*, that it actually serves as an indicator of source. *See Mana Prod., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1071 (2d Cir. 1995) (holding that $3 million in advertising and an affidavit of a third-party customer was insufficient); *P.F. Cosmetique, S.A. v. Minnetonka Inc.*, 605 F. Supp. 662, 672–73 (S.D.N.Y. 1985) (holding that $5 million in cumulative advertising and $6 million in cumulative sales for the entire product line was insufficient); *see also Sara Designs, Inc. v. A Classic Time Watch Co.*, 234 F. Supp. 3d 548, 555–56 (S.D.N.Y. 2017) (dismissing trade dress infringement claim because plaintiff merely alleged, in conclusory fashion, that its watch designs were widely

---

[1]   Its failure to do so is telling, given the evidence of third-party use of similar bracket designs. *See* Declaration of Vladislav Pejic in Opposition to Plaintiff's Motion for Expedited Discovery (Dkt. 35) ¶ 12.

recognized by consumers, without providing its "advertising expenditures, consumer surveys, marketing coverage or prior attempts to plagiarize [the] trade dress"); *Vedder Software Grp. Ltd. v. Ins. Servs. Offices, Inc.*, 2013 WL 12121098, *10 (N.D.N.Y. Mar. 22, 2013) (dismissing trade dress infringement claim because the plaintiff had not "sufficiently alleged facts to plausibly suggest that its trade dress … possesses secondary meaning"), *aff'd*, 545 F. App'x 30 (2d Cir. 2013).

Moreover, GeigTech's advertising expenditures must be disregarded because it is apparent from the face of the complaint that the advertisements promote the functional aspects of the design.  Indeed, GeigTech's own complaint describes how its ads tout functional aspects of the purported trade dress.  *See* Compl. (Dkt. 1) ¶ 45 ("As stated in James Geiger's first ad, there are 'No Valances–No Fascias–No Ceiling Pockets–No Visible Screws–No Stress.'").  The sample advertisements attached to the complaint similarly promote the functional aspects of the purported trade dress.  *See, e.g.*, Compl. Ex. B (Dkt. 1-2) at 2 ("GeigTech™ Shades are designed to mount inside your window casing, and remain exposed in a perfect world where form meets function."); *id.* at 7 (touting "fascia-free motorized shades"); *id.* at 14 ("seamless window solutions"); *id.* at 27 ("The beautiful hardware allows for a fascia free design, while still hiding wires, screws and blends in with the modern beach house aesthetic seamlessly.  No bulky shade boxes or long cords disrupt the lovely views."); *id.* at 42 ("Our sleek and modern design eliminates unsightly screws, fascia and exposed wires….  Designs range from our exposed aluminum R Series brackets to our seamlessly hidden P Series pocket system.").  These advertisements, which promote "the functional advantages" of GeigTech's product without calling attention to nonfunctional aspects of the design, are not probative to secondary meaning. *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, 108 U.S.P.Q.2d 1636,

2013 WL 866867, *4, 9–10 (S.D.N.Y. 2013) (granting motion to dismiss where "advertising expenditures directed to the functional aspects of [the product's design] d[id] not provide cogent evidence of secondary meaning").

Nor does GeigTech allege facts of any alleged copying that would support an inference of secondary meaning, much less facts that would establish that the "primary significance of [the claimed design] is to identify the source of the product rather than the product itself." *Yurman Design*, 262 F.3d at 115. Mere allegations that the defendant copied the plaintiff's claimed trade dress, without allegations that others have plagiarized the claimed design, are not sufficient to infer secondary meaning. *See, e.g.*, *Bubble Genius*, 239 F. Supp. 3d at 600 ("The Amended complaint alleges that only defendant has violated plaintiff's trade dress. Accordingly, this factor militates against an inference that the alleged trade dress has acquired a secondary meaning."; granting motion to dismiss) (citing *Urban Grp.*, 2013 WL 866867, at *4 (attempts to plagiarize factor weighed against the finding of a secondary meaning where the only plagiarizing alleged was the conduct at issue)).[2]

**C.    GeigTech fails to adequately allege that its trade dress is nonfunctional.**

"The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 164 (1995). Where, as here, the asserted trade dress is unregistered, Section 43(a) of the Lanham Act requires that the plaintiff bear "the burden of proving that the matter sought to be protected is not functional" as an affirmative element of its case. 15 U.S.C. § 1125(a)(3). This provision

---

[2] Lutron denies GeigTech's conclusory allegation that Lutron "copied" its brackets. *See, e.g.*, Compl. (Dkt. 1) ¶¶ 48, 52, 56. GeigTech does not identify a single element of its claimed trade dress that Lutron purportedly copied, or any facts supporting an intent to capitalize on GeigTech's purportedly source-identifying alleged trade dress. *See Cicena, Ltd. v. Columbia Telecomms. Grp.*, 900 F.2d 1546, 1552 (Fed. Cir. 1990).

operates as a "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 30 (2001).

As the Second Circuit has emphasized, the "test of nonfunctionality in trade dress claims that are based on product design is even more critical than in trade dress claims based on packaging, because a monopoly right in the design of the product itself is more likely to preclude competition," and "[a]s with the overbreadth element, rigorous application of the requirement of nonfunctionality is necessary to avoid undermining the carefully circumscribed statutory regimes for the protection of useful and ornamental designs under federal patent and copyright law." *Yurman Design, Inc.*, 262 F.3d at 116 (internal quotation marks and citations omitted). To survive a motion to dismiss, the complaint must contain sufficient factual allegations to establish a plausible inference of nonfunctionality; a plaintiff may not rely on "conclusory" or "generalized assertions" about the product or features at issue. *DO Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) (granting motion to dismiss claim for infringement of a purported trade dress in the stitching pattern in the back pocket of denim jeans because the plaintiff failed to adequately plead non-functionality).

A feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Id.* at 408. A feature may also be aesthetically functional if "the exclusive use of [the feature] would put competitors at a significant non-reputation-related disadvantage." *Id.*; *see also Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 222 (2d Cir. 2012) ("[A] mark is aesthetically functional, and therefore ineligible for protection under the Lanham Act, where protection of the mark *significantly* undermines competitors' ability to compete in the relevant market."). By contrast, a feature is nonfunctional

if the plaintiff shows that "it is merely an ornamental, incidental, or arbitrary aspect of the device." *TrafFix*, 532 U.S. at 30.

As noted above, GeigTech's own complaint, as well as advertisements attached to the complaint, tout the functional benefits of its purported trade dress, including that the design eliminates the need for valances, fascias, or ceiling pockets to hide the hardware, that the design contains no visible wires or screws:



No Valances-No Fascias-No Ceiling Pockets-No Visible Screws-No Stress

NOTHING TO HIDE.
No visible fasteners or screws. Just the cleanest, simplest shading technology in the world.

not obstructive. The beautiful hardware allows for a fascia free design, while still hiding wires, screws and blends in with the modern beach house aesthetic seamlessly. No bulky shade boxes or long cords disrupt the lovely views. As with

*See* Compl. Ex. B (Dkt. 1-2) at pp. 1, 6, 27. These features of GeigTech's purported trade dress are plainly functional, as they affect the quality and desirability of the product.

GeigTech also fails to sufficiently allege that its claimed design is not aesthetically functional. As the Court of Appeals has held, "where an ornamental feature is claimed as a trademark and trademark protection would significantly hinder competition by limiting the range of adequate alternative designs, the aesthetic functionality doctrine denies such protection." *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 81 (2d Cir. 1990). If anything, the non-conclusory factual allegations in GeigTech's complaint and the advertisements attached to it actually reinforce the statutory presumption that the design features are

aesthetically functional rather than source-identifying in nature.  As noted above, GeigTech has

described its trade dress broadly, essentially asserting rights to any combination of a "clean" and

"minimalist" looking circular jamb brackets with U-shaped center and end brackets.  While

GeigTech asserts that these are "ornamental features" that are nonfunctional, that is not

consistent with its advertising.  Indeed, GeigTech repeatedly advertises that its design is the

simplest possible aesthetic design—*i.e.*, that it is characterized by a *lack* of ornamentation or

other arbitrary or distinguishing features that might otherwise constitute elements of a

protectable trade dress.  GeigTech's own advertising thus reinforces the presumption that its

design elements are intended to be aesthetically pleasing rather than to identify or distinguish

GeigTech's products.  Indeed, the claimed design is so minimalist that it is not clear how a

competitor could offer an alternative.  Such highly minimalist aesthetic functionality is not

protectable.

GeigTech asserts in its complaint that its bracket designs are nonfunctional because

"other designs for [the brackets] existed prior to the creation of [GeigTech's brackets] that

accomplished the purpose of holding roller shades in place" and that protecting its designs would

not significantly undermine its competitors' abilities to compete "because other designs … exist

and are still used throughout the shading industry."  Compl. (Dkt. 1) ¶¶ 47, 51, 55.  But as

GeigTech itself alleges, the clean and modern look of its products is desirable to consumers.  *Id.*

¶ 20.  Thus, granting GeigTech a monopoly on its vaguely alleged "clean" and "minimalist"

design would significantly harm competition because Lutron and third-party competitors would

be barred from introducing their own clean, minimalist window shading designs, thereby

harming competition and reducing consumer choice.  *See Wallace*, 916 F.2d at 81 ("Wallace

may not exclude competitors from using those baroque design elements necessary to compete in

the market for baroque silverware."); *Bubble Genius*, 239 F. Supp. 3d at 597 (dismissing claim

for infringement of purported trade dress in novelty soaps designed to look like chemical

elements from the periodic table because each of the claimed design features was generic and

featured "well-known decorative details … that exist in the public domain"); *Waddington N. Am.*

*Bus. Tr. v. EMI Plastics, Inc.*, 2002 WL 2031372, at *4 (E.D.N.Y. Sept. 5, 2002) ("The simple,

basic, and entirely unoriginal spoke and S-shaped lip designs on Waddington's trays do not serve

to identify or distinguish the trays as CaterLine trays. *They serve to enhance the aesthetic appeal*

*of the trays, rather than to identify the source of the trays.*") (emphasis added).

II.  **COUNT III OF GEIGTECH'S COMPLAINT, WHICH ASSERTS A COMMON-LAW CLAIM FOR EITHER "UNJUST ENRICHMENT" OR "UNFAIR COMPETITION," FAILS FOR THE SAME REASONS AS GEIGTECH'S LANHAM ACT CLAIM.**

Count III of GeigTech's complaint is denominated and pleaded as a claim for unjust

enrichment. *See* Compl. (Dkt. 1) ¶¶ 60–66. But in its motion papers, GeigTech clarifies that its

claim is in the nature of a common-law claim for unfair competition. *See* Dkt. 41 at 9. Either

way, GeigTech's common-law claim fails for the same reasons as its Lanham Act claim.

"In New York, a common law unfair competition claim is identical to a Lanham Act

claim, save for the additional requirement that plaintiff show defendant's bad faith." *Heptagon*

*Creations, Ltd. v. Core Grp. Mktg. LLC*, 2011 WL 6600267, at *9 (S.D.N.Y. Dec. 22, 2011),

*aff'd*, 507 F. App'x 74 (2d Cir. 2013); *see also Jeffrey Milstein v. Greger, Lawlor, Roth Inc.*, 58

F.3d 27, 34–35 (2d Cir. 1995) ("The essence of unfair competition under New York common

law is the bad faith misappropriation of the labors and expenditures of another, likely to cause

confusion or to deceive purchasers as to the origin of the goods.") (internal quotation marks and

brackets omitted). Where a plaintiff has failed to state a claim for trade dress infringement under

the Lanham Act, "its claim for common law unfair competition necessarily fails." *Heptagon*

*Creations*, 2011 WL 6600267, at *9; *accord Bubble Genius*, 239 F. Supp. 3d at 602

14

("[P]laintiff's common law unfair competition claim fails for the same reason that its Lanham Act claim fails:  plaintiff has not established ownership of a distinctive, nonfunctional trade dress.").  Putting aside the issue of bad faith—of which there is none—GeigTech's failures to adequately articulate its purported trade dress or to plead facts demonstrating that the trade dress is non-functional and has achieved secondary meaning are fatal to its unfair competition claim.

GeigTech's labeling of its claim as one for "unjust enrichment" does not allow it to avoid these requirements.  Under New York law, "unjust enrichment is not a catchall cause of action to be used when others fail.  It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  Thus, unjust enrichment is unavailable "where it simply duplicates, or replaces, a conventional contract or tort claim."  *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016) (internal quotation marks omitted) (dismissing unjust enrichment claim as duplicative); *see also Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) (same).

## CONCLUSION

For the foregoing reasons, Counts II and III of GeigTech's complaint should be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated:  July 30, 2018                                  Respectfully submitted,

                                                       **ARNOLD & PORTER KAYE SCHOLER LLP**

                                                       By:   */s/ James D. Herschlein*
                                                             James D. Herschlein
                                                             Paul C. Llewellyn
                                                             Kyle D. Gooch
                                                             250 West 55th Street
                                                             New York, NY 10019-9710
                                                             T:  212.836.8000
                                                             F:  212.836.8689
                                                             james.herschlein@arnoldporter.com
                                                             paul.llewellyn@arnoldporter.com
                                                             kyle.gooch@arnoldporter.com

                                                             Scott W. Breedlove (*pro hac vice*)
                                                             John S. Torkelson (*pro hac vice*)
                                                             **CARTER ARNETT PLLC**
                                                             8150 North Central Expressway, Suite 500
                                                             Dallas, TX 75206
                                                             T:  214.550.8188
                                                             F:  214.550.8185
                                                             sbreedlove@carterarnett.com
                                                             jtorkelson@carterarnett.com

                                                             *Attorneys for Defendant*
                                                             *Lutron Electronics Co., Inc.*