UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEIGTECH EAST BAY LLC,<br><br>              Plaintiff,<br><br>      v.<br><br>LUTRON ELECTRONICS CO., INC.,<br><br>              Defendant. | No. 1:18-cv-05290-CM<br><br>ECF Case |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT LUTRON ELECTRONICS CO., INC.'S MOTION
# TO DISMISS COUNTS II AND III FOR FAILURE TO STATE A CLAIM

**ARNOLD & PORTER KAYE SCHOLER LLP**
James D. Herschlein
Paul C. Llewellyn
250 West 55th Street
New York, NY 10019-9710
T:  212.836.8000
F:  212.836.8689
james.herschlein@arnoldporter.com
paul.llewellyn@arnoldporter.com

**CARTER ARNETT PLLC**
Scott W. Breedlove (*pro hac vice*)
John S. Torkelson (*pro hac vice*)
8150 North Central Expressway, Suite 500
Dallas, TX 75206
T:  214.550.8188
F:  214.550.8185
sbreedlove@carterarnett.com
jtorkelson@carterarnett.com

*Attorneys for Defendant*
*Lutron Electronics Co., Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    I.    GEIGTECH RELIES ON PRE-*IQBAL/TWOMBLY* LAW (AND ALLEGATIONS). ................................................................................................ 1

    II.    GEIGTECH HAS FAILED TO DEFINE ITS PURPORTED TRADE DRESS WITH THE REQUISITE LEVEL OF SPECIFICITY. ............................... 2

    III.    GEIGTECH HAS NOT PLAUSIBLY ALLEGED SECONDARY MEANING. .................................................................................................................... 4

    IV.    GEIGTECH HAS NOT PLAUSIBLY ALLEGED NON-FUNCTIONALITY AND, MOREOVER, HAS EFFECTIVELY ALLEGED FUNCTIONALITY. ............................................................................... 7

    V.    GEIGTECH'S COMMON LAW CLAIM FAILS WITH ITS LANHAM ACT CLAIM .................................................................................................................. 9

    VI.    THERE IS NO BASIS TO GRANT LEAVE TO AMEND ................................. 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

<div align="right">Page(s)</div>

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................1, 2

*Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*,
    2009 U.S. Dist. Lexis 2667 (N.D. Cal. Jan. 7, 2009) ...................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................1, 2

*Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*,
    2017 WL 74729 (S.D.N.Y. Jan. 4, 2017) ........................................................................7

*Bubble Genius LLC v. Smith*,
    239 F. Supp. 3d 586 (E.D.N.Y. 2017) .............................................................4, 6, 7, 9

*Car–Freshner Corp. v. D & J Distrib. & Mfg., Inc.*,
    2015 WL 3385683 (S.D.N.Y. May 26, 2015) .................................................................9

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
    11 F. Supp. 3d 317 (E.D.N.Y. 2014) ..........................................................................5, 10

*Cicena, Ltd. v. Columbia Telecomms. Grp.*,
    900 F.2d 1546 (Fed. Cir. 1990) .........................................................................................6

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777 (2012) ...........................................................................................................9

*DO Denim, LLC v. Fried Denim, Inc.*,
    634 F. Supp. 2d 403 (S.D.N.Y. 2009) ..............................................................................7

*Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*,
    790 F. Supp. 2d 732 (N.D. Ill. 2011) .................................................................................8

*E-Z Bows, L.L.C. v. Professional Prod. Research Co.*,
    2005 U.S. Dist. Lexis 3453 (S.D.N.Y. Mar. 8, 2005) ...................................................8

*Eliya, Inc. v. Kohl's Dep't Stores*,
    2006 WL 2645196 (S.D.N.Y. Sept. 13, 2006) ..............................................................7

*Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*,
    784 F. Supp. 2d 441 (S.D.N.Y.2011) ...............................................................................9

*F5 Capital v. Pappas*,
   856 F.3d 61 (2d Cir. 2017)..................................................................................................10

*Global Beauty Grp., LLC v. Visual Beauty, LLC*,
   2018 WL 840102 (S.D.N.Y. Feb. 12, 2018)........................................................................10

*Harlequin Enterprises Ltd. v. Gulf & Western Corp.*,
   644 F.2d 946 (2d Cir. 1981)..................................................................................................6

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
   113 F.3d 373 (2d Cir. 1997)..................................................................................................3

*Larkem v. Dep't of Educ.*,
   No. 17 Civ. 7017 (ER), 2018 WL 1959555 (S.D.N.Y. Apr. 23, 2018) ................................10

*Le Sportsac, Inc. v. Dockside Research, Inc.*,
   478 F.2d 602 (S.D.N.Y. 1979)..............................................................................................7

*Luv n' Care Ltd. v. Walgreen Co.*,
   695 F. Supp. 2d 125 (S.D.N.Y. 2010).................................................................................10

*Mahoney v. Endo Health Sols., Inc.*,
   2016 WL 3951185 (S.D.N.Y. July 20, 2016) .......................................................................9

*Mana Prod., Inc. v. Columbia Cosmetics Mfg., Inc.*,
   65 F.3d 1063 (2d Cir. 1995)..................................................................................................5

*National Lighting Co., Inc. v. Bridge Metal Indus., LLC*
   601 F. Supp 2d 556 (S.D.N.Y. 2009)....................................................................................4

*R.F.M.A.S., Inc. v. So*,
   619 F. Supp. 2d 39 (S.D.N.Y. 2009).....................................................................................8

*Sara Designs Inc. v. A Classic Time Watch Co.*,
   234 F. Supp. 3d 548 (S.D.N.Y. 2017)...................................................................................3

*Tannerite Sports, LLC v. NBCUniversal News Grp., a div. of NBCUniversal Media, LLC*,
   864 F.3d 236 (2d Cir. 2017)................................................................................................10

*United States ex rel. Tessler v. City of N.Y.*,
   712 F. App'x 27 (2d Cir. 2017) ..........................................................................................10

*Thompson v. V.E.W. Ltd, Coty, Inc.*,
   2007 WL 1746739 (S.D.N.Y. June 15, 2007) ......................................................................4

*Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
   2013 WL 866867 (S.D.N.Y. Mar. 8, 2013) ......................................................................5, 6

iii

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
    529 U.S. 205 (2000) ..................................................................................................... 4

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001) ..................................................................................... 2, 3

*Zam & Zam Super Market, LLC v. Ignite Payments, LLC*,
    No. 17-3571-cv, 2018 WL 2460154 (2d Cir. June 1, 2018) ....................................... 10

**Statutes**

Lanham Act ......................................................................................................................... 9

**Other Authorities**

Rule 12(b)(6) ....................................................................................................................... 1

**PRELIMINARY STATEMENT**

GeigTech abandoned its trade dress claim in its preliminary-injunction reply brief, and the trade dress claim in its complaint fails as well, as a matter of law: GeigTech fails to articulate the specific elements of a protectable trade dress; fails to plead plausible facts to establish secondary meaning (required for a product configuration); and affirmatively demonstrates that its purported trade dress is functional. Indeed, the key attribute of GeigTech's design—that its shade brackets are nearly invisible, as consumers want—precludes its claim to exclusive rights to every bracket that is thin, rounded, and minimalist, *i.e.*, nearly invisible. To support this sweeping claim, GiegTech cites pre-*Iqbal/Twombly* cases on the Rule 12(b)(6) standard, repeatedly quotes formulaic boilerplate from its complaint to argue that it has adequately alleged its claims, misstates and distorts the law and simply ignores many of the cases cited by Lutron. Its vague trade dress description and its studied avoidance of its own allegations of the aesthetic desirability of unobtrusive, minimalist shade brackets confirm that GeigTech really does seek to enforce its supposed "right to exclude others from the high-end exposed roller shade market." Dkt. 15 at 8. It cannot enlist trade dress and related law to achieve this anticompetitive objective.

**ARGUMENT**

**I.    GEIGTECH RELIES ON PRE-*IQBAL/TWOMBLY* LAW (AND ALLEGATIONS).**

GeigTech begins its opposition by asserting that it need only allege claims with "legal feasibility," citing cases that predate the seminal *Iqbal* and *Twombly* decisions. (Opp. at 3, 11). These decisions, of course, hold that, on a Rule 12(b)(6) motion, the Court should accept all *well-pleaded* factual allegations, but not "legal conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "'formulaic recitation[s] of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). A complaint must plead "enough facts to state a claim to relief that

1

is plausible on its face," *Twombly*, 550 U.S. at 570. As shown below, GeigTech largely relies on what *Iqbal* and *Twombly* reject – "formulaic recitation[s] of the elements of a cause of action."

## II. GEIGTECH HAS FAILED TO DEFINE ITS PURPORTED TRADE DRESS WITH THE REQUISITE LEVEL OF SPECIFICITY.

As GeigTech concedes, a plaintiff asserting trade dress rights in a product configuration "must offer 'a precise expression of the character and scope of the claimed trade dress'" (Opp. at 4). *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001) (plaintiff "must articulate the design elements that compose the trade dress"). This requirement allows the Court to "winnow[] out claims that are overbroad as a matter of law," evaluate secondary meaning and nonfunctionality, and "shape narrowly-tailored relief." *Id.* at 117 (citations omitted).

Despite three chances (in its Opposition here, and in reply briefs on its motions for expedited discovery and a preliminary injunction), GeigTech still has not explained how the vague trade dress descriptions in its complaint satisfy the above pleading requirements. Plaintiff (Opp. at 4-5) describes the purported trade dress of its three brackets as follows:

| jamb bracket | "a clean circular element that is integral and seamless with both the shade and the wall." Compl. (Dkt. 1) ¶ 45. |
|---|---|
| center bracket | "a clean, U-shaped element, where the U-shaped element fits seamlessly between two shade ends that abut the same, effectively creating a 'shade sandwich' with the U-shaped element in the middle." *Id.* at ¶ 49. |
| end bracket | "a clean U-shaped element that stands alone in its ornamental connection of the end of the shade to a wall." *Id.* at ¶ 53. |

GeigTech tries to adorn these meager descriptions with formulaic incantations of "radical," "unique and distinctive," but these labels are anything but the required "precise expression of the character and scope of the claimed trade dress." (Opp. at 4, 5). Each bracket is "clean," whatever that means. The jamb bracket is "circular" (like the shade that it is holding) while the others are "U-shaped" (with a circular part like the shade that it is holding). Beyond that, the purported descriptions devolve into gibberish ("seamless with the wall"; "stands alone in its ornamental

2

connection of the end of the shade to a wall") or rely on elements other than the brackets to describe their alleged appearance ("two shade ends that abut the same, effectively creating a 'shade sandwich'"). (Opp. at 6, 7). GeigTech could try to make its descriptions match its products. It could admit, for example, that each bracket's rounded element actually may consist of two rounded elements, one with a greater diameter than the other, as several photos in its complaint show (*see, e.g.*, Compl. (Dkt. 1) ¶¶ 44, 48, 52). The proffered descriptions, however, assert a breathtakingly broad claim to the exclusive right to *any shade bracket design that is thin, rounded and minimalist*, *i.e.*, unencumbered by wires, screws and other mechanisms.

As shown in Lutron's moving brief, GeigTech's vague descriptions fail to plead the specific elements of a trade dress, render the claimed trade dress overbroad, and make it impossible to assess issues of functionality, secondary meaning, and confusion. It is not enough to say these issues can be left to later discovery. In the cases cited by Lutron, courts rejected descriptions (including at the pleading stage) that were at least as detailed as those alleged here. In *Yurman,* the Second Circuit rejected trade dress described as "the artistic combination of cable [jewelry] with other elements," 262 F.3d at 117, quite similar to GeigTech's allegation of, for example, a "circular element." Compl. (Dkt. 1) ¶ 45. In *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) (a preliminary injunction case, but applying the same principal as *Yurman*), the Court rejected a claimed furniture design:

> described as "actually floating or suspended. It incorporates large, round 3–inch–diameter pipes which are bended and curved . . . giving it a wavelike effect. It uses rods for its seating" and consisting of "large three-inch tubing, with a powdered cosmetic finish, bent in gentle turns that roll around the perimeter of the furniture which in combination with the various seating surfaces gives the viewer a floating or suspended feeling."

(citations omitted). *See also Sara Designs Inc. v. A Classic Time Watch Co.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017) (dismissing complaint that contained "a high level description of

3

features of several watches, such as 'gradient chain,' 'lobster claw closure,' and 'leaf-shaped logo'"); *Thompson v. V.E.W. Ltd, Coty, Inc.*, 2007 WL 1746739, at *1, 3 (S.D.N.Y. June 15, 2007) (dismissing complaint because description of crowns created "by 'weaving and molding gold and silver wire into forms that she adorns with jewels'" was not "an adequate articulation of a distinctive trade dress"). Contrary to what GeigTech asserts (Opp. at 6), *Thompson* did *not* hinge on plaintiff "fail[ing] to provide any basis for why its alleged trade dress was distinctive." Another case, *National Lighting Co., Inc. v. Bridge Metal Indus., LLC*, also rejected on a 12(b)(6) motion a description similar to that here: "the positioning of the fluorescent bulb, the distribution of light from the bulb, the angle at which the metal frame is curved, the placements of screws, . . . the lack of visibility of hardware, the method of wiring, the shielding design and shielding width, fixture depth, and the overall color and texture combinations." 601 F. Supp. 2d 556, 562 (S.D.N.Y.2009). GeigTech's similarly deficient description should be rejected as well.

## III. GEIGTECH HAS NOT PLAUSIBLY ALLEGED SECONDARY MEANING.

GeigTech begins its secondary meaning argument by wrongly suggesting that it need not show secondary meaning: "J Geiger expressly alleges that its trade dress is inherently distinctive." (Opp. at 7). But product designs are *never* inherently distinctive. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212-16 (2000); Def. Mem. at 7. Thus, to establish secondary meaning, a plaintiff must establish that "the primary significance of [the trade dress] is to *identify the source* of the product rather than the product itself." *Wal-Mart Stores*, 529 U.S. at 210, 211 (2000) (emphasis added). And, under *Iqbal/Twombly,* the plaintiff must "allege facts that would support a plausible claim that its trade dress has acquired a secondary meaning." *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598, 600-01 (E.D.N.Y. 2017) (dismissing allegations of secondary meaning similar to those made here; citing cases).

As Lutron's moving brief noted, the complaint does not allege any secondary meaning survey, unsolicited media coverage of the claimed trade dress, actual sales figures, or prior attempts to plagiarize GeigTech's design. GeigTech's response instead consists of formulaic recitations of the secondary meaning factors, without factual allegations sufficient to create a "plausible claim" of secondary meaning. Thus, regarding advertising expenditures, GeigTech merely alleges $1.2 million in marketing spend over a three-year period for its entire product line. *See* Compl. (Dkt. 1) ¶¶ 17–19, 43, 46, 50, 54. It fails to allege how or where that money was spent, or how much was spent on public-facing ads emphasizing its purported trade dress. The cases cited by Lutron—which GeigTech either misstates, distorts, or ignores—confirm (often at the pleading stage) that such advertising levels do not establish secondary meaning. *See* Def Mem. at 9 (citing cases)[1]; *see also Carson Optical, Inc. v. Prym Consumer USA, Inc.,* 11 F. Supp. 3d 317, 343 (E.D.N.Y. 2014) (complaint "failed to allege facts that would support a plausible inference that . . . trade dress acquired secondary meaning."). While GeigTech asserts that the ads relate to the claimed trade dress, in fact, as shown below, the ads (*see, e.g.,* Compl. Ex. B (Dkt. 1-2) at 2, 7, 14, 27) are directed to the functional aspects of the design, and therefore do "not provide cogent evidence of secondary meaning." *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, 2013 WL 866867, at *4 (S.D.N.Y. Mar. 8, 2013).

On media coverage, GeigTech again relies on boilerplate: "J Geiger's ornamental trade dress is widely recognized and praised by architects and designers throughout the United States and the world," Opp. at 8, citing Compl. (Dkt. 1) ¶ 15 (which actually says GeigTech's

---

[1] GeigTech falsely states that *Mana Prod., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1071 (2d Cir. 1995) denied summary judgment on a trade dress claim. In fact, it *granted* summary judgment for defendant, holding that $3 million in advertising was insufficient to show secondary meaning. Although it quibbles with the case's procedural posture, GeigTech does not explain how allegations of $1.2 million in total advertising can raise a plausible inference of secondary meaning when $3 million is insufficient to withstand summary judgment.

5

"invention" was praised). Compl. (Dkt. 1) ¶ 15. The one article GeigTech cites (Dkt. 16-2) (not referenced in the complaint, nor asserted to be "unsolicited") discusses the product's functional aspects, including aesthetic appeal, but not anything about it being source-identifying.

With respect to sales, again, GeigTech alleges *no actual sales figures*, merely year-over-year percentage increases, and does not cite to a single post-*Iqbal/Twombly* case accepting allegations of secondary meaning that contain no concrete dollar amounts.

As for exclusivity of use, GeigTech mischaracterizes its own pleading, stating that, according to Compl. (Dkt. 1) ¶ 21, "[i]t has had exclusive use of the mark until Lutron announced Palladiom in September, 2017." (Opp. at 9). In fact, Paragraph 21 only alleges that Lutron introduced its Palladiom system in September 2017, after issuance of GeigTech's patent – without a word about exclusive use.

GeigTech relies on its unsupported claim that Lutron copied its designs. But as *Bubble Genius* held, mere allegations that a defendant copied, without allegations that others also have, are insufficient to infer secondary meaning. 239 F. Supp. 3d at 600; *accord, Urban Grp.*, 2013 WL 866867, at *4 (factor weighed against secondary meaning where only alleged copying was the conduct at issue). And, while copying *with intent to trade on a plaintiff's goodwill* may allow an inference of secondary meaning, GeigTech alleges no facts supporting an intent to capitalize on its purported goodwill. *See Cicena, Ltd. v. Columbia Telecomms. Grp.*, 900 F.2d 1546, 1552 (Fed. Cir. 1990). The complaint is devoid of any plausible allegations of such willful intent, and it is simply not plausible that Lutron–an industry-wide leader in lighting and shading control–would want to trade on the purported goodwill of GeigTech.)[2]

---

[2] Unlike here, *Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 949-950 (2d Cir. 1981), cited by GeigTech, involved "extensive national advertising, . . . phenomenal sales success . . . the results of a consumer survey . . . [and] extensive, unsolicited media coverage";

## IV. GEIGTECH HAS NOT PLAUSIBLY ALLEGED NON-FUNCTIONALITY AND, MOREOVER, HAS EFFECTIVELY ALLEGED FUNCTIONALITY.

To survive dismissal, a trade dress complaint must contain sufficient factual allegations to establish a plausible inference of non-functionality, not merely "conclusory," "generalized assertions." *DO Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009); *accord, Bubble Genius*, 239 F. Supp. 3d at 594. Although GeigTech makes the surprising assertion that "Lutron does not dispute that J Geiger adequately pleads non-functionality" (Opp. at 12), Lutron showed in its moving brief that GeigTech does not allege specific facts showing non-functionality and, moreover, that *the only plausible reading of the complaint* (and attached ads) is that the design *is functional*. Once again, GeigTech relies on boilerplate and recites the basic functionality factors (*e.g.,* Opp. at 14, citing Compl. (Dkt. 1) ¶¶ 47, 51, 55) to argue that it pleads plausible facts of non-functionality, and cites pre-*Iqbal* cases (*e.g., Eliya, Inc. v. Kohl's Dep't Stores*, 2006 WL 2645196 (S.D.N.Y. Sept. 13, 2006)) to argue that no more is needed.

The thrust of the complaint and its attached ads, however, is that consumers do not want to see shade brackets or related wires or mounting screws, and that a bracket design that is essentially invisible, blending into the shades and the wall, is highly "desirable." Not only does Geiger depend on boilerplate allegations of non-functionality, but its complaint actually makes the case that *the design is functional.* Thus, Geiger alleges that the design eliminates the need for valances, fascias, or ceiling pockets to hide the hardware, that the design contains no visible

---

and "substantial evidence that [defendant] deliberately imitated" plaintiff's book cover design "to capitalize on" that design. Similarly, *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F.2d 602, 604, 608 (S.D.N.Y. 1979), involved not only sales evidence and "extensive advertising and unsolicited media coverage," but also defendant's admitted exact copying of plaintiff's products. *See also Bobcar Media, LLC v. Aardvark Event Logistics, Inc.,* 2017 WL 74729, at *7 (S.D.N.Y. Jan. 4, 2017), asserting something akin to packaging rather than product configuration, alleged millions in sales, eight years exclusive use, and other indicia of secondary meaning; without discussion, the court merely noted that the plaintiff also alleged plagiarism by the defendant.

wires or screws, and that the design is "seamless with both the shade and the wall" (which has the obvious functional advantage of minimizing light gaps between the shade and the wall). *See, e.g.,* Compl. (Dkt. 1) ¶¶ 45, 49, 53 & Ex. B at pp. 2, 6, 27. Similarly, GeigTech repeatedly alleges that the claimed "clean" and "minimalist" look is highly "desirable" to consumers, eliminating "ugly" mechanisms. *E.g.,* Compl. (Dkt. 1) ¶¶ 20, 53. The advertising attached to the complaint touts these desirable features. *See, e.g.,* Compl. Ex. B (Dkt. 1-2); Def. Mem. at 9 (quoting excerpts from GeigTech ads). And while GeigTech labels its design non-functional because there are alternative ways of "holding roller shades in place" (Opp. 14), it also says (Opp. 15-16) those alternatives are markedly inferior. These facts contrast sharply with the functionality cases cited by GeigTech, none of which involved allegations of anything akin to a minimalist architectural fixture that buyers strongly preferred to be invisible.[3]

      The shade-brackets design asserted by GeigTech—with circular shapes (like the shades they hold), and thin (so that they are discrete and minimize gaps of light)—for fixtures that *nobody wants to see* as Geiger repeatedly asserts, is the very essence of utilitarian and aesthetic functionality. Geiger cannot point to credible, well-pleaded allegations raising a plausible inference to the contrary. GeigTech argues that the brackets could be square (Opp. at 14), instead of an unobtrusive circular shape that matches the rolled shades; competitors can use brackets with visible wires and mounting hardware (*id.* at 15), despite the consumer desire for the opposite; that "nothing suggests that the position of the shade to the bracket is driven by utilitarian concerns" (*id.* at 14), despite the obvious fact that wider gaps between shade and wall

---

[3] *See E-Z Bows, L.L.C. v. Professional Prod. Research Co.*, 2005 U.S. Dist. Lexis 3453 (S.D.N.Y. Mar. 8, 2005) (bow making machine); *R.F.M.A.S., Inc. v. So*, 619 F. Supp. 2d 39 (S.D.N.Y. 2009) (jewelry design); *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, 2009 U.S. Dist. Lexis 2667 (N.D. Cal. Jan. 7, 2009) (nesting boxes); *Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*, 790 F. Supp. 2d 732, 737 (N.D. Ill. 2011) (industrial valves).

means more light coming through even when the shades are down.

In the end, GeigTech's position amounts to this: (a) consumers want a minimalist design so discrete that they don't even notice it; (b) GeigTech's design is so minimalist that it cannot articulate the design's elements beyond reciting geometric shapes; yet (c) the design is not functional because GeigTech incants the functionality factors.  GeigTech effectively claims an exclusive right to shade brackets that nobody will notice.  Trade dress law does not permit that.

## V.  GEIGTECH'S COMMON LAW CLAIM FAILS WITH ITS LANHAM ACT CLAIM

GeigTech wholly ignores Lutron's showing that, as the New York Court of Appeals has held, "unjust enrichment . . . is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  The claim is unavailable "where it simply duplicates, or replaces, a conventional contract or tort claim." *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016).  GeigTech gives no reason to ignore this settled law.

Instead, GeigTech now argues that the claim is for "unfair competition" and survives even if the Lanham Act claim is dismissed.  Where a plaintiff's Lanham Act claim for trade dress infringement fails, however, "its claim for common law unfair competition necessarily fails." *Heptagon Creations*, 2011 WL 6600267, at *9; *accord Bubble Genius*, 239 F. Supp. 3d at 602.  GeigTech argues that New York unfair competition law "does not always require a showing of secondary meaning" (Opp. at 20), but that ignores the other fatal defects in its trade dress claim, including failure to adequately articulate a protectable and non-functional trade dress. *See, e.g.*, *Car–Freshner Corp. v. D & J Distrib. & Mfg., Inc.*, 2015 WL 3385683, at *9 (S.D.N.Y. May 26, 2015) (common law unfair competition requires a "distinctive, nonfunctional trade dress"); *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441, 448 (S.D.N.Y.2011) (common law trade

9

dress plaintiff must show distinctiveness and non-functionality). Moreover, GeigTech's citation for this proposition holds that New York also requires "intentional palming off." *See Luv n' Care Ltd. v. Walgreen Co.,* 695 F. Supp. 2d 125, 135 (S.D.N.Y. 2010). GeigTech does not come close to alleging actual facts supporting a plausible inference of intentional palming off. *See, e.g., Carson Optical,* 11 F. Supp. 3d at 336 ("[C]onclusory allegation that defendants copied and reproduced the distinctive elements . . . and sold 'knockoff products,' . . . is insufficient to establish the bad faith requirement for a cognizable claim under New York law.").

## VI. THERE IS NO BASIS TO GRANT LEAVE TO AMEND

Finally, it is well-settled in this Circuit that courts may deny leave to amend as futile where a plaintiff gives no indication how it would survive a motion to dismiss. *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) (affirming denial of leave to amend on the ground that plaintiff failed to identify how it would cure deficiencies in the amended complaint); *Tannerite Sports, LLC v. NBCUniversal News Grp., a div. of NBCUniversal Media, LLC,* 864 F.3d 236, 252 (2d Cir. 2017) (same); *Zam & Zam Super Market, LLC v. Ignite Payments, LLC,* No. 17-3571-cv, 2018 WL 2460154, at *4 (2d Cir. June 1, 2018) (same); *United States ex rel. Tessler v. City of N.Y.*, 712 F. App'x 27, 30-31 (2d Cir. 2017) (same). Following this established rule, courts in this Circuit routinely deny leave to amend as futile where, as here, plaintiffs do "not specify how amendment would cure pleading deficiencies." *Larkem v. Dep't of Educ.,* No. 17 Civ. 7017 (ER), 2018 WL 1959555, at *6 (S.D.N.Y. Apr. 23, 2018); *accord, Global Beauty Grp., LLC v. Visual Beauty, LLC,* 2018 WL 840102, at *9 (S.D.N.Y. Feb. 12, 2018).

## CONCLUSION

For the foregoing reasons and the reasons set forth in Lutron's moving brief, Counts II and III of GeigTech's complaint should be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated:  August 20, 2018

Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

By:  */s/ James D. Herschlein*
James D. Herschlein
Paul C. Llewellyn
250 West 55th Street
New York, NY 10019-9710
T:  212.836.8000
F:  212.836.8689
james.herschlein@arnoldporter.com
paul.llewellyn@arnoldporter.com

Scott W. Breedlove (*pro hac vice*)
John S. Torkelson (*pro hac vice*)
**CARTER ARNETT PLLC**
8150 North Central Expressway, Suite 500
Dallas, TX 75206
T:  214.550.8188
F:  214.550.8185
sbreedlove@carterarnett.com
jtorkelson@carterarnett.com

*Attorneys for Defendant
Lutron Electronics Co., Inc.*