UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────── X

GEIGTECH EAST BAY LLC,

    Plaintiff,

-against-

LUTRON ELECTRONICS CO., INC.,

    Defendant.

──────────────────────────────── X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/3/2024

18 Civ. 05290 (CM)
19 Civ. 04693 (CM)
20 Civ. 10195 (CM)

## SECOND CLAIM CONSTRUCTION DECISION

McMahon, J.:

The court issued its original claim construction decision on May 5, 2022, (Dkt. No. 163). However, it became apparent some months ago that the parties did not agree on the meaning of two additional terms – "adjacent" and "extends away" – as used in the '717 patent. Since the parties' experts rely on opposing definitions of these terms, claim construction will also determine whether I will allow or disallow certain expert testimony related to these two disputed terms.

### I. Relevant Procedural History

The court assumes the parties' familiarity with the facts and the procedural history of the case. An extensive discussion of both is available in the court's August 12, 2021, Decision and Order Denying Plaintiff's Motion for Preliminary Injunction and Staying the Remainder of the Case, (Dkt. No. 141), and May 5, 2022, Claim Construction Decision. (Dkt. No. 163). However, in order to understand fully the parties' claim construction arguments, it will be necessary to recount some of it yet again.

1

### A. *The Dispute Over "Adjacent"*

On December 22, 2022, Lutron's technical expert, Dr. Eric Maslen, issued his noninfringement report. (Dkt. No. 218-2). The court's claim construction decision – construing all terms that the parties had identified as disputed – had already issued. The court, and I assume the parties, were under the impression that no other terms remained to be construed. Unfortunately, Maslen's report revealed that GeigTech and Lutron assigned different meanings to two additional terms.

The parties' first dispute is over the meaning of the term "adjacent" as it is used in element 8[c] of the '717 Patents' claims. The claim element describes, "an opening extending through the bracket, the opening having a first end *adjacent* the first surface and a second end *adjacent* the second surface . . . ." (emphasis added). Maslen explains that he "understand[s] the ordinary meaning of 'adjacent' may imply touching or adjoining, or it could mean something more subjective such as being near to." (Dkt. No. 218-2 ¶197). In the context of element 8[c], Maslen interprets "adjacent" to mean "adjoining." Based on this definition, Maslen argues noninfringement, since the Palladiom system's "'second end' does not touch (or *adjoin)* the identified 'second surface.'" (Dkt. No. 218-2 ¶197) (emphasis added).

On February 23, 2023, GeigTech's noninfringement and invalidity expert, Dr. Nancy Perkins, testified during her deposition that for the purpose of her infringement analysis "adjacent" means "nearby." (Dkt. No. 277, 17).

On February 24, 2023, in a Motion in Limine to Exclude the Testimony of Maslen, GeigTech argued that the court should exclude Maslen's infringement opinions, on the ground that he had not applied the proper construction of the "adjacent" limitation. (Dkt. No. 216). In its opposition, Lutron argued that GeigTech was the party improperly construing the term because,

2

while GeigTech did not offer a definition for "adjacent," its expert, Perkins, had misconstrued "adjacent" during her deposition to mean "nearby." (Dkt. No. 277, 17).

On September 20, 2023, I issued a decision and order on multiple motions to strike, motions to exclude the opinions and proposed testimony of multiple experts, and motions for summary judgment. (Dkt. No. 308). In that decision, I opined on the "adjacent" issue:

> While GeigTech is correct that there is no reason Lutron could not have raised these claim construction issues earlier, it seems clear to me that neither side understood that the other was interpreting the term "adjacent" differently.... The question then is whether "adjacent" truly has more than one ordinary meaning or whether one expert is operating with an erroneous understanding of the term's meaning. Upon review, it is apparent that the term "adjacent" has more than one ordinary meaning. It can mean adjoining or abutting, or it can mean close to, without necessarily touching. The question is what the term means in the context of this patent. That requires claim construction.

(Dkt. No. 308, 64-65).

### B. *The Dispute Over "Extends Away"*

Maslen's noninfringement report gives rise to a second disputed claim term. Maslen argues noninfringement of element 1[a] of the '717 Patent Claims, which describes "a side configured to bear against the support surface such that ***the bracket extends away*** from the support surface and is adjacent an end of the roller window shade assembly." (emphasis added). Maslen claims that, because the Palladiom bracket has a foot, "[o]nly a *portion* of the bracket extends away from the support surface," and another portion of the Palladiom bracket (*i.e.,* the "foot" portion) extends parallel to the support surface. (Dkt. No. 218-2 ¶¶145-151) (emphasis added). Thus, Maslen concludes that the Palladiom brackets do not infringe, since the *entire bracket* does not extend away from the support surface.

GeigTech's Second Motion for Summary Judgment disputed Maslen's interpretation as improperly narrow. GeigTech also argued that Lutron had waived any right it might have had to

propose "new" constructions of "extends away." (Dkt. No. 239, 7-9). GeigTech did not offer its own proposed constructions for these terms, which suggests that it assigns the phrase its ordinary meaning. *Id.*

Once again, it was apparent that the parties disagreed about the meaning of terms that had not previously been identified as contested. Accordingly, I asked for additional claim construction briefing on "extends away."

When I ordered additional briefing, I informed the parties that I would not follow my usual rule that claim construction arguments be limited to intrinsic evidence in the first instance. I ordered that the parties should first argue that intrinsic evidence supports their proposed construction, and then argue that extrinsic evidence (which could include testimony from persons skilled in the art) does so. As the Federal Circuit requires, I will rule based on intrinsic evidence if I can, and resort to consideration of extrinsic evidence only if I cannot.

Once these disputed claims are construed, I will also make a final ruling about whether any of the proposed expert testimony about "adjacent" or "extending away" will be allowed or excluded.

## II. Legal Standard

In interpreting disputed patent claims, the court looks first to the intrinsic evidence of record – the patent itself, the claim language, the specification, and the prosecution history, if in evidence. *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F. 3d 1361, 1367 (Fed. Cir. 2004). The specification is always highly relevant to claim construction analysis. The Federal Circuit has indicated that the specification is "the single best guide to the meaning of a disputed term," (*Phillips v. AWH Corp.*, 415 F. 3d 1303, 1315 (Fed. Circ. 2005) (*en banc*)), and the Supreme

Court has held that claims are to be construed "in light of the specifications and both are to be read with a view to ascertaining the invention." *United States v. Adams*, 383 U.S. 39, 39 (1966).

Claim construction is a straightforward process. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). The words of a claim are generally given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1313. In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. *Id.* at 1314. There is a "heavy presumption that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).

### III. Adjacent is construed to mean "lying nearby or close to, but not necessarily touching"

#### A. *Proposed Constructions*

According to the specification and the limitations of Claim 8, the bracket has "a first surface configured to bear against the support surface" and "a second surface extending substantially perpendicular to the first surface, wherein the second surface is configured to extend adjacent an end of the roller window shade assembly." The claim limitation at issue, 8[c], then discloses "an opening extending through the bracket, the opening having a first end *adjacent* the first surface and a second end *adjacent* the second surface." The parties dispute what the term "adjacent" means only with respect to the latter part of this sentence, *i.e.*, "a second end of the opening being adjacent to the second surface." (Dkt. 308, 63-64). However, I see no reason, nor do the parties explain, why my construction of "adjacent" would not also apply to the "first end" and "first surface" terms in the claim. After all, when a patentee uses a word multiple times in a patent it generally is accorded the same meaning in each instance. *See PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359,


1366 (Fed. Cir. 2007) (*citing Fin Control Sys. Pty., Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed.Cir.2001)). Accordingly, my construction will apply to both uses of "adjacent" in this claim limitation.

Lutron's proposed construction of "adjacent" is "adjoining," by which it means "touching." GeigTech proposes "lying nearby or close to, but not necessarily touching." GeigTech's proposed definition is broader than Lutron's, but it necessarily includes Lutron's. Thus, the question I must answer is whether "adjacent," as used in element 8[c], is a limited term such that the ends of the openings within the bracket must always adjoin or touch their respective surfaces. If so, then Lutron's definition is correct and Maslen's testimony about the noninfringement of the bracket is admissible. If, however, "adjoin" is broader than simply touching, then GeigTech's definition is correct and Maslen's testimony contradicts the claim construction and so is not admissible.

### B. *The Term Cannot Be Construed Using Only Intrinsic Evidence*

GeigTech and Lutron agree that nothing in the claims, figures or specification explicitly requires that the second end of the opening that runs through the bracket actually touch the second surface. The fact that nothing in the intrinsic record compels "adjacent" to mean "adjoining or touching" is some evidence that Lutron's proposed construction is not correct. And indeed, GeigTech argues that because nothing in the intrinsic record explicitly requires that the bracket touch the second surface, that record fairly implies that proximity between bracket and surface is all that is required. Specifically GeigTech notes that Claim 1[c], which describes the function of the "opening," states that it must be "configured to receive electrical wiring therethrough such that the electrical wiring can pass from the support surface to the roller window shade assembly to power a motor of the roller window shade assembly." (the '717 Patent, Dkt. No. 339-1 at 10:30-35). GeigTech concludes that the intrinsic record thus supports a conclusion that the only

requirement for "adjacency" is that the breadth of space between the second surface and the second end of the opening be close enough to allow wiring to run from the second end of the opening to the motor of the roller window shade assembly. GeigTech obviously does not specify how close that is.

The problem with GeigTech's argument is that the breadth of space through which wiring can run from the second end of the opening to the motor of the roller is not necessarily "lying nearby or close to, but not necessarily touching." A wire could run from the second end of the opening to the motor of the window shade over many different spans of distance, few of which would be close enough to qualify as "adjacent" under GeigTech's "nearby or close to" limitation on the word. The wire could run for a few millimeters, or three feet, or ten yards between the second surface and the second end of the opening and still make it to the roller shade; but while the first of those distances seems to imply adjacency, the other two, using GeigTech's own reasoning (and the court's common sense), plainly do not. I believe GeigTech is correct that proximity is required for two things to be adjacent, but that does not resolve the "adjoining" or "touching" issue.

As the parties point to nothing in the intrinsic record that answers definitively that question, I turn to extrinsic evidence in order to construe the meaning of the term "adjacent."

C. *Extrinsic Evidence*

I start my analysis with my own favorite bit of extrinsic evidence – the dictionary.

Dictionaries contain the ordinary meaning of words. As noted above, the Federal Circuit favors construing terms in accordance with their ordinary meaning unless something in the patent suggests otherwise. If the ordinary meaning of a claim term is readily apparent to lay judges, a court may apply the "widely accepted meaning of commonly understood word," using general

7

purpose dictionaries. *Phillips*, 415 F.3d at 1312. Courts may "rely on dictionary definitions when construing claim terms and . . . dictionaries . . . are often useful to assist in understanding the commonly understood meaning of words." *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1348 (Fed. Cir. 2005) (*quoting Phillips*, 415 F.3d at 1322) (cleaned up). The court must ensure that any reliance on dictionaries accords with the intrinsic evidence: the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314. The rule that "a court will give a claim term the full range of its ordinary meaning," *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001), does not mean that the term will presumptively receive its broadest dictionary definition or the aggregate of multiple dictionary definitions. *Phillips*, 415 F.3d at 1320–22. Rather, in those circumstances where reference to dictionaries is appropriate, the task is to scrutinize the intrinsic evidence in order to determine the most appropriate definition. *Free Motion*, 423 F.3d at 1348 (*citing Phillips*, 415 F.3d at 1322–24).

Neither party disputes that the term "adjacent" is a commonly understood term rather than a technical one, and neither party asserts that it has some specialized meaning known to persons skilled in the art of roller shade design and manufacture. Therefore, the dictionary offers a highly persuasive source for the "ordinary" meaning of the word in question.

The various dictionary definitions of the term, in combination with the intrinsic evidence, suggest that Lutron's definition of adjacency is far too narrow. We start with Black's Law Dictionary, which defines "adjacent" as: "Lying near or close to, but not necessarily touching." (11th ed. 2019). Other dictionaries contain definitions that similarly preclude limiting adjacency to touching: "1a: not distant or far off . . . : nearby but not touching . . . b: relatively near and having nothing of the same kind intervening: having a common border: ABUTTING, TOUCHING: living nearby or sitting or standing relatively near or close together . . . c: immediately preceding or

8

following with nothing of the same kind intervening." *Adjacent*, Webster's Third New International Dictionary (2002) (cleaned up); "Lying near or close (to); adjoining; contiguous, bordering. (Not necessarily touching, though this is by no means precluded.)" *Adjacent*, Oxford English Dictionary (Second Edition 1991). Although some definitions include the possibility that adjacent objects *may* be adjoining or touching, "Each [dictionary] definition of 'adjacent' makes it clear that two objects . . .need not actually touch or come into contact with the other to qualify as adjacent." *Centennial Molding, LLC v. Carlson*, 401 F. Supp. 2d 985, 991 (D. Nev. 2005) (collecting dictionary definitions).

Many courts have had occasion to construe the meaning of the word "adjacent" when patents do not point to any specialized meaning for that word. Those courts – including the Federal Circuit – have consistently concluded that the ordinary meaning of "adjacent" includes being nearby, next to or close to, but not necessarily adjoining or touching. *See, e.g., Free Motion*, 423 F.3d at 1349; *General American Trans. Corp. v. Cyrp-Trans. Inc.*, 93 F.3d 766, 769 (Fed. Cir. 1996); *Paragon Films, Inc. v. Berry Global, Inc.*, No. 1:20-cv-02440, 2022 WL1157506, at *10 (W.D. Tenn. April 19, 2022); *Aero Industries v. Quick Draw Tarpaulin Sys., Inc.*, Case No. 1:05-cv-0439, 2009 WL 838684, at *11 (S.D. Ind., March 27, 2009); *Bridgelux, Inc. v. Cree, Inc.*, No. 9:06-cv-240, 2008 WL 2325623, at *11 (E.D. Tex. June 3, 2008); *Centennial Molding*, 401 F. Supp. 2d at 991; *Ricoh Co., Ltd. v. Katun Corp.*, 380 F. Supp. 2d 418, 425-26 (D.N.J. 2005). In other words, all these courts have adopted the dictionary definition – the "ordinary meaning" – of the word "adjacent" as being close, and perhaps even next to, but not necessarily touching.

But before I adopt this common understanding definition, I must examine the intrinsic evidence in order to see if anything in the patent is inconsistent with it. It is Lutron's burden to

9

convince me that something about this patent calls for touching or abutting in the definition of "adjacent." And here Lutron fails.

Lutron's "extrinsic evidence" consists of Maslen's expert testimony. Maslen argues that the dictionary definition cannot possibly be the correct definition, because defining "adjacent" as "nearby or close to" renders the phrase "an opening extending through the bracket, the opening having a first end adjacent the first surface and a second end adjacent the second surface" meaningless. According to Maslen, because the bracket in a window shade is necessarily small, every part of the bracket could be said to be "nearby" another part of the bracket, and so could be "adjacent" to the first and second surfaces. For that reason, Lutron urges that its construction of "adjacent" to mean "touching" or "adjoining" is the only construction that makes sense.

I am not persuaded by Maslen's reasoning. For purposes of the claim under consideration, whether other portions of the bracket are "nearby" is of no moment. We are looking at the opening, and at no other portion of the bracket. The opening that extends through the bracket has to be adjacent to the (first and) second surface(s); it is irrelevant whether the other portions of the bracket are near the opening, or for that matter are near to the first and second surfaces.

Furthermore, this is not the first time a court has faced claim construction arguments like Lutron's. In *Paragon*, the defendant argued that "nearby" was an inappropriate construction for "adjacent" as it "raise[d] indefiniteness issues because the public cannot determine what amount of distance is 'nearby' for purposes of avoiding infringement of the asserted claims." *Paragon Films*, 2022 WL 1157506, at *10. Much like the bracket described by the '717 Patent, the patent-in-suit in *Paragon* was also relatively small – a apparatus for winding film roll. *Id.* at *1. The defendant proposed a construction of "adjacent" as "adjoining, abutting, or bordering." *Id.* at *10. The court rejected that construction, explaining that "next to", in the context of the patent-in-suit,

10

was the most understandable construction of "adjacent" beyond its plain and ordinary meaning.[1] *Id.*

In *Centennial*, the court rejected the plaintiff's narrow interpretation of "adjacent," which rested on the same argument that Maslen makes – that the term "adjacent" cannot be meaningfully applied to apply to an object (*e.g.* an opening) that could then be equally "adjacent" to two separate reference points (*e.g.* a first and second surface). The *Centennial* plaintiff had argued that: "If [a] fill opening is located approximately midway between the outside edge of the tank's corner and the center of the tank, [that] fill opening cannot be any more adjacent to the corner than it can be adjacent to the center of the tank." *Centennial Molding*, 401 F. Supp. 2d at 991. The court agreed but reasoned that "the fact that the fill opening may be adjacent to the center of [a] tank does not preclude the fill opening from being adjacent to the corner of the tank as well." *Id.* From this the court reasoned that, to "qualify as adjacent, the corner and fill [of a liquid storage and dispensing tank] opening need only be close or near to each other." *Id.*

Ultimately, this court agrees with the reasoning of other courts. I will not limit the scope of adjacency to "adjoining" or "touching." Nothing in the patent suggests such an understanding of the terms. If the patentee had wanted to limit his invention to openings that adjoined their respective surfaces, he could have used words that made this intention clear. *See N. Star Innovations, Inc. v. Hirshfeld*, No. 2020-1874, 2021 WL 5121180, at *5 (Fed. Cir. Nov. 4, 2021).

The question then becomes whether anything in the patent suggests that GeigTech's proposed definition of "adjacent" – which is of "lying nearby or close to, but not necessarily touching" – is too broad. I see nothing in the patent that contradicts the dictionary definition (ordinary meaning) of the term, which is "lying nearby or close to, but not necessarily touching."

---

[1] The court did not define the word per the entire proposed dictionary definition of "not distant; nearby", but instead defined "adjacent" as "next to", in order to best clarify its understanding of the term's plain and ordinary meaning.

11

### IV. Extends Away

*A. Proposed Constructions*

The "extends away" language appears in claim 1:

A bracket configured to be coupled to a support surface and configured to support a roller window shade assembly, the bracket comprising: a side configured to bear against the support surface ***such that the bracket extends away from the support surface*** and is adjacent an end of the roller window shade assembly . . . .

GeigTech's proposed construction is "a side configured to bear against the support surface such that ***a portion of the bracket that holds the window shade assembly*** extends away from the support surface and is adjacent an end of the roller window shade assembly."

Lutron's proposed construction is ***"the bracket as a whole, starting from its side configured to bear against the support surface***, extends away from the support surface, not parallel to it."

As it turns out, there is absolutely no need to construe the meaning of the phrase "extends away from" because the parties do not propose competing definitions for that phrase.[2] It means what it means – that the bracket sticks out or projects away from the support surface. Ordinary meaning. End of story.

The parties' actual debate is over exactly WHAT must "extend away" from the support surface. Neither party disputes that one face of the bracket must be configured to bear against the support surface – indeed, both parties include that phrase (or a substantially similar phrase) in their proposed definitions. Lutron argues that the entire bracket (minus, of course, the face of the bracket that is configured to bear against the support surface) must extend away from the support surface. To put this in purely practical terms, Lutron argues that the '717 specification does not encompass

---

[2] In fact, Lutron admits in its briefing that the parties' dispute is really about "bracket" and not "extends away." (*See* Dkt. No. 340, 3).

12

an L-shaped, or "footed," bracket, because only a portion of such a bracket extends away from the support surface, while the rest (or foot) of the "L" is attached to the support surface -- or, put otherwise, a portion of the "L" – not just one face – "bears against" the support surface and so does not "extend away" from the support surface. As it happens, the Palladiom bracket has an exposed L-shape in which one prong (the "arm") of the L extends horizontally away from the support surface, while the other prong (the "foot") of the L-shape does not, but instead lies ("bears") against the support surface. This configuration differs from the specification in the '717 patent, in which the bracket does not have an arm and a foot, so that only one face of the bracket bears against the support surface (actually, one face of the bracket couples to a mounting plate using an "invisible-mount configuration," which in turn is then coupled (attached) to the support surface (*i.e.*, to the wall)). (the '717 Patent, Dkt. No. 339-1 at Fig. 21). Lutron in essence seeks to limit the definition of "bracket extending away" to the exact parameters of the specification – which, as we all know, is not the usual rule. *See, e.g., Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008); *Phillips*, 415 F.3d at 1323; *Liquid Dynamics*, 355 F.3d at 1366.

GeigTech takes the position that the court has already resolved this issue. In the original claim construction opinion, the court determined that the "use of a mounting plate [as shown in the specification] is not the only way that a bracket can be coupled to a support surface, and the language of the claim does not limit the means that can be used to accomplish the coupling." (Dkt. No. 163). The court specifically dismissed Lutron's argument that the '717 patent limitations called for some sort of invisible mounting system that would precludes the use of an L-shaped bracket with a protruding foot. GeigTech now argues that Maslen's conclusion that only a portion of the bracket needs to extend away from the support system runs contrary to that opinion and should be precluded.

13

GeigTech is correct. I did in fact decide this issue during the initial claim construction phase. I do not appreciate being asked to do it again.

B. *Intrinsic Evidence*

Lutron's supports its proposed construction by pointing out that claim 1[a] does not say that a "portion of the bracket" extends away. Instead, the claim merely says, "the bracket extends away." But while the claim does not say a *portion* extends away, it also does not say that the *whole* bracket extends away.

Lutron's second argument is that the "distinct look" described by the claim language is that the bracket *as a whole* extends away from the wall. Lutron does not cite to any text from the patent to support this claim, and the "distinct look" of the product would appear to be more relevant to the trade dress claim than to the patent infringement claim.

Lutron next argues that the patent's Figure 21 illustrates the plain meaning of the disputed claim language, where the entire "bracket"—starting from its side that is configured to bear against the wall or support surface—extends away from the support surface.



FIG. 21

This argument suffers from two fatal flaws.

14

First, it is well settled that a court will not import claim limitations from a specific figure. *See, e.g., Computer Docking*, 519 F.3d at 1374; *Phillips*, 415 F.3d at 1323; *Liquid Dynamics*, 355 F.3d at 1366.

Second, Lutron is incorrect that the entire "bracket" in Figure 21 extends away from the support surface. One side (surface) of the bracket does not extend away from the support surface, but rather attaches to the support surface. At least some portion of the '717 bracket necessarily runs parallel to the support surface, because it is attached to the support surface (bears against it) rather than extending away from it. Figure 21 illustrates this. According to the figure's description, "the opening (2110) can extend *from a side (2130) of the bracket (2100)* adapted to bear against a flat surface. . . ." Item "2130," which is a face of the bracket and so is a part, *i.e.* a portion, of the bracket, does not extend away from the support surface. Rather it extends parallel to the support surface.

So must be the case with any bracket that embodies the invention in the '717 patent. One part of the bracket is configured to bear against the support surface and the rest of the bracket extends away from the support surface in a perpendicular manner. The patent itself does not specify which part of the bracket, or how much of the bracket, bears against the support surface, but any portion of the bracket that does so necessarily does not "extend away" from the support surface. If the foot of an L shaped bracket is attached to the support surface, then it would seem that the foot of the L is the "first surface" which is "configured to bear against the support surface" as described in Claim 8. That being so, the arm of the L that runs perpendicular to the foot "extends away" from the support surface.

In other words – as I held long ago – nothing in the language of the claims precludes the possibility that an L shaped bracket could infringe, and that it true whether because it is not

15

attached to a mounting plate or because the foot of the L does not "extend away" from the support surface. The foot of the L is no different in that regard from face 2130 in the specification – it is the part of the bracket (and it is indeed PART of the bracket) that is configured to bear against a support surface. Nothing about this rewrites the claim; rather it is Lutron that is seeking to rewrite a claim that very clearly calls for one face (portion) of the bracket to adhere to the support surface and the rest of the bracket – however shaped – to extend away from the support surface.

The intrinsic record establishes that GeigTech has the better of the argument. Accordingly, there is no need for me to consider extrinsic evidence. I will construe the disputed terms as: "a side configured to bear against the support surface such that *a portion of the bracket* extends away from the support surface and is adjacent an end of the roller window shade assembly." I do not find GeigTech's proposed addition of "that holds the window shade assembly" following "bracket" to be necessary.

## V. Expert testimony

When I ordered briefing on these claim construction issues, I also informed the parties that I would make a final ruling on whether any of the proposed expert testimony about "adjacency" or "extending away" will be allowed or excluded.

### A. *Expert Testimony Regarding "Adjacent"*

GeigTech asked that the court exclude all of Maslen's opinions on the "adjacent" limitation in element 8[c]. (Dkt. No. 216, 25). The portion of Maslen's report that argues noninfringement of element 8[c] is based on Maslen's incorrect interpretation of "adjacent", *i.e.*, that the term cannot mean "near" and must mean "adjoining or touching." Accordingly, the court finds that Maslen's testimony using this interpretation cannot be introduced at trial. To the extent Maslen's testimony

at trial uses the term "adjacent", he must adhere to the term's proper construction, *i.e.*, "lying nearby or close to, but not necessarily touching."

In its opposition to GeigTech's motion to exclude Maslen's opinions, Lutron argued that Perkins – in her deposition testimony – misconstrued "adjacent" to merely mean "nearby." However, Lutron did not formally request that the court exclude her testimony on the term. Regardless, Perkins should rely on the court's interpretation of "adjacent" in her testimony, not her construction of "adjacent" to mean "nearby."

B. *Expert Testimony Regarding "Extends Away"*

GeigTech asked that the court exclude all of Maslen's opinions on the "extends away" limitation. (Dkt. No. 216, 16). As previously mentioned, GeigTech does not truly challenge Maslen's interpretation of "extends away", but rather his interpretation of the term "bracket" that precedes "extends away." Accordingly, given that Maslen improperly construed "bracket" as limited to the whole bracket, rather than a portion, Maslen is excluded from testifying based on his previous, incorrect understanding of a "bracket" that "extends away." Perkins does not opine on this subject, so her testimony is unaffected.

This constitutes the opinion and order of the court. It is a written opinion.

Dated: January 3, 2024

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

17