UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

GEIGTECH EAST BAY LLC,

    Plaintiff,

-against-

LUTRON ELECTRONICS CO., INC.,

    Defendant.

------------------------------------------------------------X

18 Civ. 05290 (CM)
19 Civ. 04693 (CM)
20 Civ. 10195 (CM)

## DECISION ON MOTIONS IN LIMINE

McMahon, J.:

The court, for its rulings on the parties' motions *in limine*:

### I. **Lutron's Motions *in Limine***

**Motion #1 (Dkt. # 310):** Lutron moves *in limine* to exclude argument or evidence about the doctrine of equivalents – specifically, that the accused products satisfy any element of an asserted patent claim under that doctrine.

At the time of its opposition motion, GeigTech explained to the court that it did not intend to offer DOE evidence, but noted that the court had yet to rule on a last-minute claim construction issue, which could affect GeigTech's position if the court's construction differed from GeigTech's understanding of the at-issue terms. However, the court has since issued its claim construction decision that agrees with GeigTech's understanding of both disputed terms. Accordingly, there is no need for GeigTech to amend its position. The motion is granted.

**Motion #2 (Dkt. #311):** Lutron moves *in limine* to exclude any mention of the PTAB's inter partes or post grant review decisions at the upcoming trial. The motion is granted in significant part.

It is well settled that inter partes review and post grant review, once concluded, become part of the patent's prosecution history. Therefore, statements made by the parties therein are admissible as statements made by a party during the application process; and the results of the review (i.e., that certain claims were upheld by the PTO upon reexamination) are admissible as is the fact that the patent was granted in the first place. And the fact that certain claims were upheld on review is definitely relevant to the willfulness of any infringement that the jury might find, because the willfulness of continuing infringement after post-grant review may be assessed differently that infringement that preceded such review.

Of course, that is not all of what GeigTech wants to do in this case. It wants to introduce the final decision of the PTAB – all of it, not simply the result that certain claims were allowed and others were not. It is particularly eager to have the jury see the PTAB's statement that, "Petitioner's [Lutron's] inability or unwillingness to explain how the CAD [computer assisted design] drawing is different from the '717 patent creates an inference that Petitioner copied to some degree Patent Owner's bracket product and brought to market a similar and competing product." GeigTech insists that this "finding" is appropriately introduced to the jury because the issue of copying (which is disputed) is relevant both to secondary considerations of non-obviousness and to GeigTech's trade dress claim, as to which evidence of copying is highly significant.

It is for precisely that reason that the jury should NOT see the PTAB's ultimate conclusion in this regard. The PTAB's comment about copying is gratuitous, since its job was not to decide

issues of infringement (or, heaven knows, trade dress), but whether the asserted claims were allowable. Some were; some weren't. THAT is part of the prosecution history. Gratuitous PTAB comments about infringement are NOT part of the prosecution history of the patent, and whether there was copying is an ultimate issue in this case for the jury to decide. It is for the jury, as ultimate trier of fact, to evaluate the evidence of copying (some of which is the same evidence that the PTAB obviously considered, some of which will apparently be different – see the court's decision on PGR estoppel, to be found at Docket # 362) and to reach its own conclusion about whether there was copying. For it is evidence of copying, not some Government's body's opinion that there must have been copying (because of an evidentiary technicality), that must guide the jury's decision. That evidence will undoubtedly include information about Lutron's visit to GeigTech's show room. I rather imagine that Lutron will be asked about the difference between the CAD drawings and the '717 patent, and if it manages to come up with an answer to that question, its inability to produce a similar answer before the PTAB could make for interesting cross examination.[1] But asking the jury to infer from the PTAB's ruminations on the subject that Lutron must have copied – no, that is not acceptable. And a limiting instruction is not likely to be helpful, since the jurors will surely be deferential to statements by the Government body that administers the patent system.

Accordingly, the jury can hear that the PTAB reconsidered the patent, including some of the claims in suit, struck some of them as obvious or anticipated by prior art, and upheld others – including specifically claims 1–3, 8, and 10–12 that remain in this case. The jury will then be told that that is some evidence it can consider in reaching its own conclusion on the validity of the patent. The jury may also be told that it will hear some evidence about prior art that the PTAB did

---

[1] Lutron's failure to respond to the PTAB's question is a "statement made by a party" during the course of the reexamination.

not consider, which means they will be deciding the case on a record that is somewhat different from the PTAB, and they cannot infer that the PTAB would have reached the result it did if it had been aware of that evidence (*e.g.,* Cid Quintas and Kirsch). The jury will be told that the PTAB did not decide anything about infringement; that is the jury's province entirely without any antecedent ruling, and it is an entirely different issue.

The PTAB decision will NOT come in in its entirety, especially not the comment about infringement.

**Motion #3 (Dkt # 313):** Lutron moves *in limine* for an order precluding GeigTech from introducing *Daubert* rulings and criticism of experts from unrelated cases. This motion appears to be addressed primarily, if not exclusively, to Lutron's concern that GeigTech may try to cross examine its expert, Joel Delman, about a case (one, apparently, out of the many in which he has been qualified as an expert) in which he was not qualified as an expert. GeigTech responds that (1) the motion is premature; (2) it has no present intention of introducing such testimony; and (3) it should be allowed to cross examine Delman about the time he was not qualified as an expert if Delman "opens the door" to such cross by "alluding to his success in prior cases."

The motion is granted to the extent of precluding GeigTech from introducing prior judicial findings as affirmative evidence, since they are hearsay. Whether Delman may be cross examined about the singular instance that appears to be the true subject of this motion will depend on my reading of the case in question. If indeed Lutron is correct that his testimony was excluded because the court concluded that the jury would not need the assistance of an expert, then the cross examination will be precluded, because that finding does not bear on Delman's credentials or expertise. If Delman's testimony was precluded on the basis of some defect in his qualifications more closely related to the issues in this lawsuit, then of course he can be cross examined, by being

asked whether it is true that he was not accepted as an expert in *Lanard Toys Ltd. v. Anker Play Prod., LLC*, 2020 WL 6873647 (C.D. Cal. Nov. 12, 2020). And if that line of questioning is allowed Delman can be rehabilitated by being asked on redirect whether or not it is true that he was accepted as an expert in (according to Lutron) over 20 other cases.

**Motion #4 (Dkt #314):** Lutron moves *in limine* to exclude argument and evidence about "actual confusion" between its products and GeigTech's. Specifically, Lutron seeks to preclude GeigTech from introducing nine emails, Reddit threads or other internet communications that mention the similarities between the two companies' products. (*See* Dkt # 14 at pp. 1-2).

GeigTech indicates that it does not intend to introduce any of these nine communications in support of an argument that there was actual consumer confusion between the two companies' products. That should dispose of the motion.

However, GeigTech advances other points that were not comprehended in Lutron's motion. It wants to introduce some or all of the referenced evidence to prove other elements of its trade dress claims, notably substantial similarity between the products. GeigTech also asks for a ruling that "actual confusion" is difficult to establish in the high-end motorized shade market.

I can at present see no reason why GeigTech should not be allowed to establish any element of its trade dress claim with otherwise admissible evidence – or to argue that, in this particular market, certain elements (i.e., actual confusion) would be difficult to ascertain. But because I do not allow reply briefs on *in limine* motions, Lutron has not had an opportunity to respond to these arguments – which are, in essence, an *in limine* motion by GeigTech to allow it to use these nine pieces of evidence for other purposes. I cannot rule on that request without giving Lutron an opportunity to respond. It has five business days to do so. Lutron should raise any

potential evidentiary bar to using these third-party communications for any purpose (I am of course particularly thinking about hearsay).

**Motion #5 (Dkt # 316):** Moving on to damages, Lutron moves *in limine* to bar GeigTech from introducing evidence about Lutron's overall revenues, i.e., revenue from products other than the accused products. GeigTech responds that it really does not have much information about Lutron's overall revenues – very little was produced in discovery, and as Lutron is a private company, information about its earnings and profits is not publicly available. Obviously GeigTech cannot introduce what it does not have. So to that extent the motion is granted.

But GeigTech correctly notes that information about Lutron's size relative to GeigTech's is of a sort that is routinely admitted in patent cases in connection with the calculation of reasonable royalties. Lutron's own damages expert, Dr. Meyer, offers opinions about the parties' relative sizes. Overall revenues is of course but a part of the difference between the two companies, but certain other key facts, including the diversity of products offered by Lutron and the size of its dealer network, point to who is David and who is Goliath in this lawsuit. Dr. Meyer used the fact of Lutron's "overwhelmingly large size relative to J. Geiger" to conclude, as part of her *Georgia Pacific* analysis, that Lutron would have had greater bargaining power than GeigTech back in 2019. I can see no reason why GeigTech should not be able to use the same fact – the relative size of the two companies – in its presentation on the issue of relative bargaining power in a hypothetical negotiation. So to that extent the motion is denied.

**Motion #6 (Dkt # 317):** Lutron moves *in limine* to bar GeigTech from introducing evidence or argument about its foreign sales and profits in connection with the trade dress and unfair competition claims. The motion is predicated on the Supreme Court's very recent (2023) decision in the case of *Abiron Austria GmbH v. Hetronic Int'l*, 600 U.S. 412, in which the court

definitively ruled that the Lanham Act does not apply extraterritorially – and then fractured on the subject of exactly what that meant.

This is really not a motion to exclude evidence, since evidence about Lutron's foreign sales will necessarily be presented to the jury in connection with proof of damages on the patent infringement claim. Rather, it is a request for a limiting jury instruction on whether and how the jury can consider evidence that will be in the record when deliberating on damages for the trade dress and unfair competition claims. There is no need to rule on that now. The motion is denied without prejudice as premature.

I will, however, make one ruling right now: sales in Puerto Rico, or any U.S. territory, qualify as United States sales for all purposes.

**Motion #7 (Dkt # 319):** Lutron moves *in limine* to exclude GeigTech from introducing evidence or argument about Lutron's pre-Markman claim construction positions, which it accuses GeigTech of mischaracterizing. GeigTech responds that the motion is premature because there are outstanding claim construction issues, but the court has now decided those issues.

We will follow the usual rule at this trial: the jury will be given the court's claim constructions and the parties will not be permitted to introduce evidence, testimony or argument about claim construction positions that were not accepted by the court.

### II. GeigTech's Motions *in Limine*

**Motion #1 (Dkt #320):** GeigTech moves *in limine* to preclude Lutron from introducing evidence or argument comparing the accused devices to the preferred embodiments, the specification, or any non-accused product or method for the purposes of making its non-infringement arguments. GeigTech believes that Lutron intends to do this in order to get around the court's claim construction decisions.

Lutron agrees that, in order to argue non-infringement, it will compare the accused brackets to the specific elements of the patent claims that GeigTech puts before the jury. That is exactly what Lutron is supposed to do: "Infringement . . . is determined by comparing an accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with the property and previously construed claims in suit." *Sri Int'l v. Matsushita Elec. Corp.*, 775 F. 2d 1107, 1121 (Fed Cir. 1985)(en banc). But it insists that, if GeigTech intends to argue that Lutron deliberately copied plaintiff's bracket, it should be allowed to compare the bracket GeigTech designed – the one depicted in the patent and shown in GeigTech's commercial product – to Lutron's bracket.

This is where the fact that this is both a patent and a trade dress case becomes tricky. The jurors will see GeigTech's product because it is essential to the proof of the trade dress claim that the jury compare the two products, Lutron's against GeigTech's. So I am not going to forbid Lutron from showing GeigTech's product to the jury. Indeed, if GeigTech fails to show its product to the jury, it risks having its trade dress/Lanham Act claims dismissed at the close of its case. This is a matter that is appropriately handled by the court in its jury instructions. The motion is, therefore, denied.

**Motion #2 (Dkt #323):** GeigTech moves *in limine* to bar Lutron from arguing that it relied on the advice of counsel in connection with the patent infringement case, specifically insofar as it relates to the '821 patent, the parent patent to the '717 patent. Apparently two Lutron witnesses testified that they relied on the opinion of counsel (in house counsel at Lutron) on this subject.

Asked directly by GeigTech if it intended to assert an advice of counsel defense, Lutron said no, but indicated that GeigTech had, by asking its engineers about their review of the '821 patent, opened the door to introducing evidence that Lutron's legal department was included in

those internal discussions. Lutron indicated that it had no intention of providing GeigTech with any documents containing legal advice and would not waive the attorney client privilege, but said that the fact that attorneys were present at discussions could not be kept from the jury – indeed, the witnesses would have to lie to keep their presence a secret – if GeigTech was going to get into this matter.

This motion requires some context. This case is no longer about the '821 patent. GeigTech withdrew claims relating to the alleged infringement of the '821 patent after the court denied its motion for a preliminary injunction back in 2018. The patent in suit, the daughter '717 patent, was not even awarded until 2019. However, when Lutron was designing the allegedly infringing product back in 2016, its engineers, together with in house counsel, apparently looked at and discussed the '821 patent. Indeed, the engineers reached out to in house counsel in order to assure themselves that they were not going to infringe the patent while they were designing the Lutron product.

Lutron claims to have no intention of introducing evidence about those discussions as part of its affirmative case. But it argues that if GeigTech chooses, as part of ITS case, to ask the engineers about their discussions back in 2016, the engineers should not be forced to give the jury the impression that they did not involve lawyers in their deliberations – which, says Lutron, is rather different from the affirmative use of advice of counsel (we relied on the advice of counsel but we won't tell you what that advice was) as both sword and shield.

Put most simply: Lutron argues that GeigTech is trying to give the jurors the misleading notion that Lutron designed an infringing product without consulting lawyers, and GeigTech argues that, by revealing the presence of counsel at the meetings, Lutron is trying to give the jurors

the impression that counsel blessed Lutron's device as non-infringing, which would negate any willful infringement.

GeigTech asked the questions that elicited the information it now seeks to keep from the jury. The way to keep that information away from the jury is simply not to ask questions about the involvement of counsel. That is entirely in GeigTech's control. If GeigTech asks a question that calls, in fashioning a truthful answer, for a witness to reveal that he talked to a lawyer, then I will not ask the witness to be less than truthful.

But Lutron cannot be allowed to leave with the jury the impression that its engineers acted on the advice of counsel in designing their product. Lutron has indicated that it will not waive the attorney-client privilege. Therefore, Lutron may not affirmatively elicit from its witnesses the fact that they consulted with counsel when designing the allegedly infringing product. The fact that the '821 patent is not the patent in suit is really of no moment – it is the parent patent, and it has many claims that are the same as or similar to the claims of the '717 patent. Lutron's argument that the identity of everyone who was included in discussions is necessary to provide "context" is rejected; indeed, the only "context" that this information provides is the "context" that Lutron is not permitted to argue – namely, that its engineers relied on the advice of counsel when designing their product in order to avoid the parent patent. *In re EchoStar Communications Corp.*, 448 F. 3d 1294 (Fed. Cir. 2006).

GeigTech's motion is, therefore, granted. However, if GeigTech itself opens the door by asking questions like the questions it asked at deposition, I will not stop the witness from giving a true and complete answer.

**Motion #3 (Dkt. #326):** GeigTech moves *in limine* for an order precluding Lutron from presenting evidence before the jury that relates to Lutron's equitable defenses, including

specifically inequitable conduct. GeigTech argues that these defenses are for the court, not the jury, to evaluate, so presenting evidence about them before the jury would confuse and mislead the jurors in violation of Fed. R. Ev. 402 and 403.

GeigTech in essence wants the court to bifurcate the trial, letting the jury deal with invalidity and infringement and then having the court (at some future date, apparently) try the issue relating to unenforceability.

Lutron, predictably, opposes this motion. It argues that evidence about such matters as fraud on the patent office, GeigTech's original lawsuit and the preliminary injunction motion, fraud in the application for the '717 patent, and the omission of Matt Taylor as an inventor on that patent must be heard by the jury because they give rise to issues relating to the validity of the patent (a jury issue) and defamation (the counterclaim tail that wags the dog in this case). The fact that these matters are also relevant to certain of Lutron's equitable defenses does not warrant keeping evidence that is relevant to jury matters from the jury.

The motion is DENIED. I agree with Lutron that the solution is to try any issues that overlap between equitable defenses and jury issues to the jury, and to use the jury's findings in an advisory capacity only when ruling on matters that are remitted to the court. It is up to the parties to identify precisely what those issues are and to identify any and all evidence that either side intends to introduce on those questions. They parties have ten business days to give me a list of issues and a compendium of ALL the relevant evidence (I mean give me the evidence, not simply citations) – in an issue by issue format (if some evidence is relevant to multiple issues, then be sure to cite it individually on each issue to which it relates). Then the parties have five business days to provide me with objections, if any, to the use of a particular identified piece of evidence on a particular question. I particularly need to be able to identify whether any piece of evidence is

relevant only to an equitable defense and not to an issue that goes to the jury. If there is little or no such evidence (Lutron insists that there is none, and GeigTech has not specifically identified any) the trial will be much simplified.

The parties should understand that if there is any evidence that relates solely to an equitable defense that is triable by the court and does not overlap with an issue that gets tried to the jury, I will be hearing that evidence, together with argument on the issues that the court must decide, while the jury is deliberating.

The parties also need to review my rules on bench trials. By the time of the final pre-trial conference in this matter I expect them to file findings of fact and conclusions of law on the issues the court must decide. And any evidence that the parties agree should be heard only by the court must come in in the form of an affidavit (for direct), which will be followed by cross examination in open court (while the jury is deliberating).

**Motion #4 (Dkt.#328):** GeigTech moves *in limine* for an order precluding Lutron from presenting evidence or argument that its infringement theories read on or encompass prior art. Lutron responds that it has no intention of arguing prior art to rebut GeigTech's infringement claim, but insists that it must be allowed to argue prior art in order to convince the jury that the patent is invalid. Lutron is correct.

More specifically, Lutron wishes to argue that GeigTech's theory of infringement – specifically the "broad claim scope implicit in that theory" – demonstrates that the patent is invalid. Lutron argues that the Federal Circuit allowed such argument in the case of *01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 741-43 (Fed. Cir. 2018). I have read that case carefully. It holds, unsurprisingly, that a defendant arguing non-infringement must rest its argument on the assertion that the asserted claim terms, as written and construed by the court, do not read on the

defendant's products. In *Communique*, the patentee, having lost on the issue of infringement, argued to the Federal Circuit that the defendant had argued against literal infringement by asserting that it was only "practicing the prior art." The Federal Circuit said the defendant had done no such thing, but had instead carefully argued that, in order to find literal infringement, the jury had to find that defendant's product met each and every element of the asserted claims. The Federal Circuit further held that the defendant had never argued to the jury that it did not infringe because its product was architecturally equivalent to a prior art product. I do not expect Lutron to make arguments of this sort and it disclaims any intention of doing so.

But the *Communique* court also held that if a patentee argued that a claim had to be "broadly interpreted to read on an accused device," the same broad interpretation had to be assigned to the prior art for purposes of establishing the validity or invalidity of the patent. The court specifically noted that this meant the patentee should "beware of what it asks for," since adopting a broad claim construction for infringement purposes could ultimately result in a determination that the patent was invalid. *Id.* (citing *Liebel–Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007). The court went on to say: "To the contrary, as we have previously recognized, when an accused product and the prior art are closely aligned, it takes exceptional linguistic dexterity to simultaneously establish infringement and evade invalidity." *Communique*, 889 F.3d at 742-43 (citing *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002) ("Where an accused infringer is clearly practicing only that which was in the prior art, and nothing more, and the patentee's proffered construction reads on the accused device, meeting [the] burden of [establishing invalidity] should not prove difficult."); *see also SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005).

So I cannot and will not preclude Lutron from arguing, as it apparently intends to do, that the '717 patent is *invalid* because it was anticipated by the prior art – including specifically any prior art that relates to the concealment of wiring in the manner in which Lutron's product conceals the wiring. And while Lutron cannot argue that Palladiom does not literally infringe the patent merely because it is practicing the prior art, we shall see whether GeigTech has the "exceptional linguistic dexterity" to argue that any product of Lutron's that is "closely aligned" with the prior art literally infringes a *valid* patent. GeigTech can rest assured that Lutron will not be permitted to argue "practicing the prior art" as a defense to literal infringement.

**Motion #5 (Dkt. #330):** Finally, GeigTech moves *in limine* to preclude Lutron from introducing evidence of its own patents relating to the Palladiom shade. The motion is DENIED. Lutron may introduce evidence of its own research and development, including patent applications, for any relevant purpose. To the extent a limiting instruction is required, GeigTech may fashion one for the court's consideration.

This constitutes the decision and order of the court. It is a written decision.

The Clerk is directed to remove the following motions from the court's list of open motions: those at Dockets # 310, 311, 313, 314, 316, 317, 319, 320, 323, 326, 328 and 330.

Dated: January 5, 2024

_____
U.S.D.J.

BY ECF TO ALL COUNSEL