# Arnold & Porter

James Herschlein
+1 212.836.8655 Direct
James.Herschlein@arnoldporter.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/16/24

MEMO ENDORSED

January 5, 2024

1/16/2024
Lutron's request to
DENIED.

**FILED UNDER SEAL VIA ECF**

Hon. Katharine L. Parker
United States Magistrate Judge, U.S. District Court
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 750
New York, NY 10007-1312

Re: *GeigTech East Bay LLC v. Lutron Electronics Co., Inc.*,
No. 1:18-cv-05290

Dear Judge Parker:

Defendant Lutron Electronics Co., Inc. ("Lutron") respectfully submits, pursuant to Rule II.c of Your Honor's Individual Rules of Practice in Civil Cases and Rule 37 of the Federal Rules of Civil Procedure, this Letter Motion against Plaintiff GeigTech East Bay LLC ("GeigTech") to compel the production of documents and to request a conference.[1]

### A. Background

On December 11, 2023, Savant Systems, Inc. ("Savant") issued a press release disclosing that it "completed a transaction to acquire assets from J Geiger Shading." (Ex. 1.)[2] "According to Savant, its acquisition was structured to remain external to J. Geiger's lawsuit with Lutron." (Ex. 2.) Lutron counsel sent correspondence to GeigTech counsel on December 13, 2023, stating that "[t]he acquisition prompts significant questions directed to relevant issues in this case, including infringement and damages." (Ex. 3.) Among other things, Lutron requested that "GeigTech immediately produce the acquisition agreement(s) and documents relating to discussions and/or communications with Savant to the extent those documents relate to (i) any valuation of the intellectual property at issue in this litigation, (ii) this litigation and/or Lutron." (*Id.*)

GeigTech counsel responded on December 15, claiming that "[t]he transaction with Savant involved a purchase agreement regarding assets wholly sperate [sic] and unrelated to the litigation, as well as a license agreement for the intellectual property that is related to the litigation." (Ex. 3.) GeigTech was "inclined to provide [Lutron] with a copy of the

---

[1] Counsel for Lutron (James Herschlein, Paul Llewellyn, Amy DeWitt, Scott Breedlove, Catherine Langhans, and Michael Mazzullo) and counsel for GeigTech (Gary Sorden, Brian King, and James Perkins) met and conferred by Zoom on December 20, 2023 to discuss Lutron's requests.
[2] GeigTech East Bay LLC does business as J Geiger Shading Technology. (Dkt. 169 at ECF 1.)

Arnold & Porter Kaye Scholer LLP
250 West 55th Street | New York, NY 10019-9710 | www.arnoldporter.com

# Arnold & Porter

January 5, 2024
Page 2

license agreement," and offered to "schedule a call next week to answer any questions and further discuss your requests." GeigTech provided the license agreement on December 18, marking it Attorneys-Eyes Only under the Agreed Protective Order.

During the parties' meet and confer on December 20, Lutron explained its position as to the relevance of the requested documents, including (i) the purchase agreement itself, (ii) any communications between GeigTech and Savant regarding Lutron and/or this litigation, and (iii) any communications between GeigTech and Savant regarding valuation of the intellectual property included within the license agreement. (Herschlein Decl. ¶ 8.) For example, Lutron explained that communications related to the value of the intellectual property were relevant to damages, including the hypothetical negotiation and apportionment. (*Id.*) At the conclusion of the call, GeigTech's counsel indicated it would confer with its client, and the parties agreed to confer again on December 22. (*Id.*) On the scheduled day, however, GeigTech informed Lutron that it would "skip today's scheduled call and provide its position" that GeigTech does "not believe the license agreement or the asset purchase agreement ('APA') with Savant is relevant to any claims or defenses in this case," but was "willing to provide you with the APA so that you can see that for yourselves" on the condition that "it should not be shared with Lutron's in-house counsel," despite the Agreed Protective Order allowing for such disclosure. (Ex. 4; *see* Dkt. 140 at I.F.2.) Despite repeated requests by Lutron, GeigTech has not provided the APA. (Ex. 4.)[3]

**Lutron's Requested Discovery Is Relevant**. Lutron is entitled to its requested discovery related to Savant's acquisition of GeigTech's assets. "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901, at *2 (S.D.N.Y. Nov. 16, 2016). Under Rule 26(e), "[t]he duty to supplement continues even after the discovery period has closed." *Ferring Pharms. Inc. v. Serenity Pharms., LLC*, No. 1:17-09922-CM-SDA, 2019 WL 5682635, at *2 (S.D.N.Y. Nov. 1, 2019).[4]

*First*, documents related to Lutron and/or this litigation are relevant. Such communications between GeigTech and Savant related to Lutron and/or this litigation are relevant, for example to the extent the parties discussed the strength or weakness of GeigTech or Lutron's claims, or the parties analyzed or discussed the financial implications of any finding of infringement as part of its acquisition negotiations. Indeed, the license agreement itself references "GeigTech's IP in litigation." (Ex. 5 ¶ 2; *see also id.* ¶ 1.1.) Communications relating to the licensing of the asserted trade dress in this case are also potentially relevant to trade dress claims, including the elements of the trade dress, the existence of actual quality control by GeigTech as the licensor, and other issues.

---

[3] Although GeigTech agreed to produce the APA on December 22, it has yet to produce it, claiming that it was awaiting Savant's approval. (Ex. 4.) GeigTech has provided no timetable for when such approval would occur and, despite agreeing that Lutron should file this motion after receipt of the APA, on January 5, GeigTech suggested Lutron should file without first reviewing the APA. (*Id.*)

[4] GeigTech understands that the parties have a duty to supplement, as it requested updated financial information from Lutron, to which Lutron agreed. (Herschlein Decl. ¶ 10.)

# Arnold & Porter

January 5, 2024
Page 3

*Second*, documents related to any valuation of GeigTech's intellectual property are relevant to the hypothetical negotiation and the *Georgia-Pacific* factors. For example, communications between GeigTech and Savant about a potential license, including offers and counter-offers that were made, are relevant to, among other things, GeigTech's willingness to license the same technology at issue here. The Federal Circuit has expressly "acknowledge[d] that proposed licenses may have some value for determining a reasonable royalty in certain situations." *WhitServe, LLC v. Comp. Packages, Inc.*, 694 F.3d 10, 29-30 (Fed. Cir. 2012; *see Phoenix Sols Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 585 (N.D. Cal. 2008) (compelling production of all licensing negotiation documents). Notably, the license agreement licenses the very intellectual property at issue in this case, as well as other intellectual property, for one lump payment of 52,334 shares of Savant common stock – raising issues of the value assigned solely to the intellectual property in this case and the value of a share of Savant, a private entity. GeigTech's claim that the license agreement is not relevant (and, by extension, the APA) is thus factually and legally incorrect.

**GeigTech's Unilateral Determination That The License Is Not Comparable Is Not A Basis To Exclude Discovery**. GeigTech disputes the relevance of the license agreement by claiming it was executed after the hypothetical negotiation date of 2019. (Herschlein Decl. ¶ 8.) But "factual developments occurring after the date of the hypothetical negotiation can inform the damages calculation[.]" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009). As Magistrate Judge Aaron found in *Ferring*, GeigTech is "conflating what evidence is ***admissible*** with evidence is ***discoverable***." 2019 WL 5682635, at *5 (emphasis added); *see also Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2007 WL 704525, at *2 (N.D. Ill. Mar. 1, 2007) (granting motion to compel licenses despite defendant's claim of non-comparability).

**Modification Of The Protective Order Is Not Warranted.** The Agreed Protective Order—which GeigTech negotiated and agreed to, and which has governed throughout fact and expert discovery—explicitly allows in-house counsel to access documents designated Attorneys Eyes Only. (Dkt. 140 at I.F.2.) "A District Court should not modify a protective order granted under Rule 26(c) absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (cleaned up). Here, GeigTech's only stated basis for modification is that "the APA contains proprietary and highly sensitive information" (Ex. 3), which is far from the high bar set by the Second Circuit.

Accordingly, Lutron respectfully requests a discovery conference with the Court, or that the Court order GeigTech to supplement its production as outlined above.

Respectfully submitted,
/s/ *James D. Herschlein*
James Herschlein