UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————X

GEIGTECH EAST BAY LLC,

    Plaintiff,

  -against-

LUTRON ELECTRONICS CO., INC.,

    Defendant.
————————————————————X

18 Civ. 05290 (CM)
19 Civ. 04693 (CM)
20 Civ. 10195 (CM)

## QUERY FROM THE COURT

McMahon, J.:

    Folks, I was clearly not prepared for what you hit me with this morning at the conference. I reiterate: you people are immersed in this and plainly have been for weeks, if not months; I haven't thought much about this case since the new trial/remittitur decision was issued, and in particular I have spent, and must continue to spend in the near term, a fair amount of time reviewing classified documents on an expedited schedule for another case. So my mind has been elsewhere.

    I still want briefing on the schedule I imposed at the end of the conference – Monday for GeigTech, Wednesday for Lutron – and I want citations to cases. However, there a few observations I need to make – observations that I was not prepared to make at the conference but that need to be addressed in the briefing. These observations relate to GeigTech's announced intention to pursue a reasonable royalty based on the "entire market value" rule, which it believes to be supported by Mr. Blair's 2018 statement that if Lutron could not use the bracket that has now been determined to infringe the patent, it could not sell the Palladiom shading system.[1]

---

[1] By the way, contrary to Lutron's outraged argument, that statement is highly relevant and admissible evidence.

GeigTech responded to an interrogatory propounded in this case by announcing that its theory of what constituted a reasonable royalty would be revealed in its expert report. Mr. Baliban was that expert, so his report is deemed to supplement the original interrogatory response.

As we all know, Mr. Baliban opined that a reasonable royalty would be $3.84 million. It is clear as day that he did so using the "entire market value" rule. In his report, Mr. Baliban explained the "entire market value" rule as follows:

> I want my analysis to be clear about my reasoning for determining the appropriate royalty base and rate. I understand that a reasonable royalty must be tied to the claimed invention's footprint in the marketplace and should not include value attributable to unpatented features unless the entire market value rule applies. The entire market value rule permits damages based on the accused product's total revenues or profits if the patented feature drives consumer demand for the product.[2]

(Dec. 5, 2022 Baliban Report at ¶ 92). At paragraphs 93-96 of his report, Mr. Baliban explained why, in this case, the entire market value rule was the appropriate way to "apportion" between the patented and unpatented features of the Palladiom system. Baliban's reasons are essentially the reasons Mr. Sorden argued at this morning's conference – (1) the asserted claims of the patents-in-suit refer to more than just the brackets and require a shade assembly; (2) the asserted claims all require the brackets to be configured to obscure the electrical wiring when coupled to the support surface to support the window shade assembly; and (3) the roller window assembly "is a necessary element for the Asserted Claims." Notwithstanding his use of the word "apportionment," Mr. Baliban did not do any apportioning. Instead, he concluded that the value of the *entire roller shade assembly system* (including the shade fabric, the motor and the hembar) should be used in

---

[2] Mr. Baliban previously testified to all of this at trial. If the court has not previously unsealed his report, it does so now.

calculating the reasonable royalty, because "the smallest salable unit that practices the claimed invention is the end and center brackets *in combination with the roller shade assembly*," and, "There is evidence . . . that the demand for the exposed brackets and concealed wire is what drives demand for the Palladiom Shading System." (*Id.* at ¶ 96) (emphasis added).

At all times in its dealings with the court prior to today, GeigTech has taken the position that Baliban's $3.84 million number was derived using the entire market rule. For example, in its brief opposing Lutron's motion for a new trial on damages, GeigTech argued that "substantial evidence supports the application of the entire market value rule in Mr. Baliban's analysis." (Dkt. # 520 at 9). I accepted that argument in my opinion granting remittitur or a new trial; I specifically relied on it when denying Lutron's argument that Baliban's testimony should be ignored because he did not apportion between patented and non-patented features when calculating a reasonable royalty. (Dkt. # 535 at 36).

I am truly sorry I did not have time to delve deeply into the record before coming to the conference this morning (and of course I have new law clerks who know nothing about the intricacies of this case, on which their predecessors worked). My bad. I was not equipped to ask the right questions. And those questions include this: is GeigTech estopped, judicially or otherwise, from arguing that the reasonable royalty, *calculated using the entire market value rule,* is anything other than $3.84 million – especially as (1) GeigTech took that very position with the court in connection with the post-trial motions, and the amount of the remittitur was decided in accordance with that argument; and (2) in responding to the interrogatory propounded by Lutron, GeigTech represented that Baliban's report would contain its reasonable royalty analysis, and that analysis

3

is plainly entire market value analysis. I have already ruled that GeigTech's interrogatory response, as supplemented by the report it incorporates,[3] is admissible in evidence at the upcoming trial.

You should address this issue in your briefs. I am far more interested in that than I am in other arguments about what Baliban relied on or did not rely on in reaching his conclusions.

Dated: November 1, 2024

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

---

[3] I assume that Baliban's report did not exist when GeigTech answered the interrogatory.