USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/12/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GEIGTECH EAST BAY LLC,

    Plaintiff,

  -against-

LUTRON ELECTRONICS CO., INC.,

    Defendant.
------------------------------------------------------------X

18 Civ. 05290 (CM)
19 Civ. 04693 (CM)
20 Civ. 10195 (CM)

**DECISION AND ORDER**

McMahon, J.:

The facts and procedural history of this case are set out in more detail in the court's prior opinions, familiarity with which is presumed. *See* Preliminary Injunction Decision (Dkt. # 141); Claim Construction Decision (Dkt. # 163); Summary Judgment Decision (Dkt. # 308); Trade Dress Decision (Dkt. # 499); Post-Trial Decision (Dkt. # 535); and New Trial Order (Dkt. # 537). This opinion follows pre-trial briefing from the parties, (Dkt. ## 564; 565; 567), that I ordered on November 1, 2024 and November 7, 2024, (Dkt. ## 563; 566).

**BACKGROUND**

After a thirteen-day trial, a jury in this case found that certain features of a window shade bracket (the "Palladiom Bracket") sold by Defendant Lutron Electronics Co., Inc. ("Lutron") in connection with its Palladiom shading system infringed U.S. Patent No. 10,294,717, owned by Geigtech East Bay LLC ("GeigTech"). (Dkt. # 467). GeigTech elected prior to trial to seek damages for patent infringement in the form of a reasonable royalty. In response to both its Rule 26 obligations and a Rule 33 damages interrogatory served on it by Lutron – both of which required GeigTech to provide Lutron with a "computation" of its damages – Plaintiff, after making the

obvious observation that one could calculate a reasonable royalty in any number of ways, announced that it would do so in accordance with an expert report that would be provided during expert discovery. That (then nonexistent) report was expressly incorporated by reference into GeigTech's discovery responses.

GeigTech eventually did serve such a report, and the expert who provided it, Jeffrey Baliban, was duly deposed and his proposed testimony subjected to the inevitable *Daubert* motion. Baliban testified at the trial in accordance with the opinions proffered in his report – which were to the effect that "the reasonable royalty that would be paid by Lutron at least through 2023, would be 3.8 million" dollars. (Transcript of Trial ("Trial Tr.") 1126:10-12). During summation, counsel for GeigTech reiterated to the jury, "You have to fill out how much of a reasonable royalty is GeigTech asking for. We are asking for $3,843,986. *Not a penny more, not a penny less*." (Trial Tr. 1940:5-7) (emphasis added).

The jury awarded compensatory damages for patent infringement of $34,600,000 – effectively ten times what GeigTech asked for. (Dkt. # 467). There was absolutely no basis in the evidence for a royalty award of that size, and Lutron predictably moved to set it aside.[1] I granted Lutron's motion, set aside the $34.6 million, and entered an order of remittitur in the sum of $3,843,986 – the exact amount requested by Lutron. The jury concluded that Lutron's infringement was willful – a finding I did not set aside – but I denied GeigTech's motion for enhanced damages without prejudice until such time as it decided on the remittitur. (Dkt. # 535 at 61).

GeigTech chose not to accept the remittitur and requested a new trial on damages instead. (Dkt. # 536 at 1). I scheduled that trial for November 18, 2024, after advising the parties,

---

[1] Both sides made post-trial motions and I made numerous rulings but, except to the extent they may be mentioned below, they are not relevant to the disposition of the matter presently before the court.

in an order dated August 20, 2024, that the ground rules for that trial would include no new experts or expert discovery, no opinions not contained in the existing reports, and no Daubert motions.[2] (Dkt. # 537 at 1). In other words, we were going to try the same case that had been tried the first time, there being no basis on which to do otherwise, since GeigTech had disclosed no other "computation" of damages in response to Lutron's interrogatory and Rule 26. No one contacted the court to request relief from the award or to suggest that it might be necessary to reopen discovery on the ground that there was something new to try. And GeigTech did not supplement its previous discovery responses.

I held a Final Pre-Trial Conference on Friday, November 1, 2024. Within minutes, counsel for Lutron advised me that, just fifteen hours earlier – 71 days after the entry of the August 20 order – counsel for GeigTech told Lutron that it was no longer planning to call its expert witness on damages, it was no longer seeking the 14.86 percent royalty it had disclosed during discovery, and it was no longer seeking $3.84 million in damages – the amount of the only "computation" of damages it had ever provided. (Transcript of Final Pre-Trial Conference ("FPTC Tr.") 7:1-4). Lutron has substantiated this sequence of events by submitting exhibits reflecting email correspondence between the parties. On October 21, 2024, Lutron proposed exchanging "updated calculations prior to trial" and suggested that GeigTech provide Mr. Baliban's updated calculation by October 25, 2024. (Exhibit 3 to Declaration of Mikaela Evans-Aziz, Dkt. # 565-4 at 1). Lutron followed up on October 24, 2024, extending the proposed date for the updated figures to October 31, 2024. (Exhibit 4 to Declaration of Mikaela Evans-Aziz, Dkt. # 565-5 at 1). On October 31, 2024, GeigTech sent an email at 4:32 PM PDT – 7:32 PM EDT – saying "regarding the supplement

---

[2] Again, there were other aspects to the order concerning the trial; to the extent that they are relevant to any matter before the court they will be discussed below.

to expert reports, *I've just learned that we don't intend to call Mr. Baliban at this time*." (Exhibit 6 to Declaration of Mikaela Evans-Aziz, Dkt. # 565-7 at 1) (emphasis added).

GeigTech's counsel confirmed that Plaintiff had indeed decided not to call Mr. Baliban, its damages expert, at the retrial. Noting that a party had no obligation to prove damages through an expert in a patent case, *see Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003), he advised the court that GeigTech intended to put Mr. Geiger on the stand and to introduce a great deal of information about GeigTech's earnings and financial situation, including its expectation about the revenues it anticipated from an exclusive distribution deal it had signed with a company named Savant. Counsel concluded by saying, "We're not going to ask for a number at trial." Rather, it intended to "put the evidence on, give the facts . . . and let the jury decide what it is." (FPTC Tr. 11:14-18).

Lutron filed a brief with the court, which I interpreted as a motion for sanctions in the form of an order that would preclude GeigTech from proceeding at the second trial on an entirely new method of computing reasonable royalty damages – one that was not disclosed pursuant to Rule 26 or in response to interrogatories propounded prior to the first trial, for which no discovery was taken, and which did not include any "computation of each category of damages claimed" as required by Fed. R. Civ. P. 26(a)(1)(A)(iii).[3] GeigTech, which had already filed a brief on the subject of its ability to prove damages in the manner it proposed, was given an opportunity to respond to Lutron's brief.[4]

---

[3] Specifically, I construed Lutron's Opposition to GeigTech's Pretrial Brief as a motion *in limine* to (i) bar GeigTech from pursuing its proposed alternative method of proving damages as a sanction pursuant to Fed. R. Civ. P. 37; (ii) grant summary judgment or direct a verdict on the issue of damages; or (iii) otherwise bar GeigTech from abandoning its disclosed damages approach at this late date. (Dkt. # 566).

[4] Given the nearness of the trial date, and the lateness of GeigTech's announcement of its intentions, all briefing was done on an expedited basis.

4

Having reviewed the parties' submissions, I grant Lutron's motion for sanctions and am today entering an order precluding GeigTech from "proving" damages by "put[ting] the evidence on, giv[ing] the facts . . . and let[ting] the jury decide what it is." (FPTC Tr. 11:14-18). This has nothing to do with whether one could choose to prove damages without relying on an expert witness. Of course one "could." But GeigTech did not so choose. Instead, it elected to comply with its Rule 26 obligations, as well as to respond to a Rule 33 damages interrogatory, by relying on and specifically incorporating into its response an expert's calculation of damages. That is the one and only "computation of damages sought" that GeigTech has ever disclosed. Having made that litigation choice from among the various possible ways of calculating a reasonable royalty, it cannot, days prior to a new trial, retry the case on an undisclosed method of calculating damages – especially one that, in defiance of Rule 26(a)(1)(A)(iii), does not include a "computation" of its purely economic damages.

### I. Discovery Rules

The Federal Rules of Civil Procedure require that certain initial disclosures be made without receipt of a discovery request. "In general . . . a party must, without awaiting a discovery request, provide to the other parties: *a computation of each category of damages claimed by the disclosing party*—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii) (emphasis added). This rule jump starts the discovery process and remains in force throughout the course of litigation; a party is required to supplement

its Rule 26 disclosures, and to do so in a timely manner so that its opponent is not sandbagged at trial.

Fed. R. Civ. P. 37 specifies that "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In addition, Fed. R. Civ. P. 33 permits any party to propound written interrogatories to its opponent. Notwithstanding the lack of any need to serve damages interrogatories (thanks to Rule 26), competent litigators generally serve such interrogatories, to which timely responses are required. By timely I mean prior to the completion of discovery, so that adequate damages discovery can take place.[5]

## II.   History of Disclosure and Discovery on Damages in this Case

Notwithstanding the clear requirement in Rule 26 that a plaintiff disclose, without any request by the defendant, "a computation of each category of damages claimed" – which necessarily means disclosure of the amount of damages sought and the way in which that number was derived – GeigTech has long been coy on the subject of its patent damages. A review of the history of this case reveals how it has tip-toed around its disclosure obligations.

In its November 25, 2019 initial disclosures, GeigTech wrote that it was unable "to prepare a more complete and precise calculation of its damages" because it had "not obtained discovery from Lutron," but said that, "A more precise calculation of damages can be provided once Defendants provide financial information including, but not limited to, those directed to its sales of its Palladiom systems and components." (Exhibit 7 to Declaration of Mikaela Evans-Aziz, Dkt.

---

[5] Lutron has not made a motion for sanctions for a Rule 33 violation, but the Rule 33 facts are very much pertinent to the motion that Lutron has made.

# 565-8 at 5-6). GeigTech repeated these statements in its supplemental initial disclosures, dated February 4, 2022, July 15, 2022, and October 26, 2022. (*See* Exhibit 8 to Declaration of Mikaela Evans-Aziz, Dkt. # 565-9 at 5-8; Exhibit 9 to Declaration of Mikaela Evans-Aziz, Dkt. # 565-10 at 5-9; Exhibit 10 to Declaration of Mikaela Evans-Aziz, Dkt. # 565-11 at 6-10).

At least at the outset, before Lutron had provided sales data about Palladiom, GeigTech's position was understandable. However, once GeigTech had that information – and fact discovery closed on October 21, 2022 – it became immediately obligated to provide Lutron with that "more precise calculation of damages." However, in its post-fact discovery supplements to its Rule 26 responses, GeigTech failed to fill in the blank.

Fortunately for Lutron, it had propounded a belt-and-suspenders damages interrogatory. Lutron's Interrogatory No. 6 asked that GeigTech, "Describe in detail the computation of each category of damages [GeigTech] alleg[es] in this case." GeigTech made no response, objecting to the interrogatory as, "prematurely seeking, outside the scope of the Court's Scheduling Order, information that will be the subject of J. Geiger's forthcoming expert report on damages." It added, however, that, subject to objections, it "*incorporates by reference the expert disclosures that will be served* pursuant to the Court's Scheduling Order." (Exhibit 12 to Declaration of Mikaela Evans-Aziz, Dkt. # 565-13 at 16-17; Exhibit 13 to Declaration of Mikaela Evans-Aziz, Dkt. # 565-14 at 15-19; Exhibit 14 to Declaration of Mikaela Evans-Aziz, Dkt. # 565-15 at 17-21) (emphasis added). Put otherwise, GeigTech flatly declined to answer the question Lutron had asked, but announced that it would eventually file an expert report and expressly adopted whatever that expert disclosed as its computation of damages.

GeigTech initially responded to Lutron's Interrogatory No. 6 on December 16, 2019 and supplemented its response on February 4, 2022 and October 26, 2022. None of those supplemental

7

responses included a damages calculation, either.[6] But GeigTech had "incorporated by reference" the expert disclosures it planned to make. The expert disclosures were, whenever they were made, the supplemental response to the interrogatory.

GeigTech finally complied in a meaningful way with its Rule 26 obligations and responded to Lutron's interrogatory by disclosing that it would prove damages through Mr. Jeffrey Baliban, who would calculate a "reasonable royalty" for Lutron's use of the infringing bracket. Baliban calculated the reasonable royalty at 14.86% or $3.84 million on Lutron's sales of $25.874 million. (*See* Dec. 5, 2022 Baliban Report at ¶ 11; Trial Tr. 1126:8-12). In so doing, Baliban employed the "entire market value" theory of damages – a theory that allows a patentee to base its royalties on the entire value of the patented article "where the patented feature creates the 'basis for customer demand' or 'substantially create[s] the value of the component parts.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). Baliban took the position that the bracket was so integral to the entire shading system that the "the smallest salable unit that practices the claimed invention is the end and center brackets in combination with the roller shade assembly." (Dec. 5, 2022 Baliban Report ¶ 96). GeigTech found seeming support for use of the entire market value theory in a declaration that Lutron's President, Edward Blair, had submitted early on in this litigation. In that declaration, Blair asserted that he could not estimate the sales that Lutron would lose if it had to sell its Palladiom shading system without incorporating into that system the bracket it had devised – the very bracket that was eventually found to infringe GeigTech's patent.

---

[6] In its brief filed on November 4, 2024, GeigTech included a small portion of its Rule 26 disclosures and response to Lutron's Interrogatory No. 6, and argued that counsel for Lutron misled me during the Final Pre-Trial Conference. But GeigTech chose not to include any of the language that I quote above. (*See* GeigTech Brief, Dkt. # 564 at 8-9). In light of the language quoted above, I think it fair to say that Plaintiff is the party trying to mislead the court.

GeigTech never disclosed any other theory or calculation of damages prior to the close of discovery, and it relied on that theory during the first trial. It went to the jury arguing that it was entitled to a royalty of $3.84 million as calculated by Baliban using the entire market value theory of damages – "not a penny more, not a penny less." When opposing Lutron's motion for a new trial on damages, GeigTech of course insisted that the jury's obviously punitive award should be allowed to stand; but in the alternative it argued that Baliban's royalty calculation should be sustained as supported by the evidence. I agreed with the latter argument; when deciding on the amount of the remittitur, I said, "A jury award that credited Mr. Baliban's testimony and awarded damages based on his 'entire market value' theory of damages 'would be upheld by the trial court as not excessive.'" (Dkt. # 535 at 36) (quoting *Trademark Rsch. Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 337).

## DISCUSSION

I. **GeigTech's Substitution of an Undisclosed Computation of Damages at This Late Date Violates Fed. R. Civ. P. 26(a)(1)(A)(iii)**

GeigTech never provided a computation of each category of damages in its initial disclosures. (*See* Exhibits to Declaration of Mikaela Evans-Aziz *supra*). Nor did GeigTech provide a computation of each category of damages in response to Lutron's explicit request in Interrogatory No. 6. (*See* Exhibits to Declaration of Mikaela Evans-Aziz *supra*). Instead, GeigTech stated in its initial disclosures – and the respective supplements – that "A more precise calculation of damages can be provided," and in its response to Interrogatory No. 6 – the interrogatory that demanded to know how GeigTech would calculate damages – that GeigTech "incorporates by reference the expert disclosures that will be served." (*See* Exhibits to Declaration of Mikaela Evans-Aziz *supra*).

Just as it said it would do, GeigTech waited until it served Mr. Baliban's expert report, and then relied on it – and only on it – as both its "computation of each category of damages" for Rule

26 purposes and its "incorporate[d] by reference" response to Interrogatory No. 6.[7] That "computation" of its damages – calculated as a reasonable royalty using the entire market value theory – concluded that a reasonable royalty would be based on "a royalty rate of 14.86 percent applied to Lutron's sales of its Palladiom Shading System shade assemblies without jamb brackets." (Dec. 5, 2022 Baliban Report at ¶ 92). At trial, Mr. Baliban explained that, "Applying the 14.86 percent, the reasonable royalty that would be paid by Lutron at least through 2023, would be that 3.8 million." (Trial Tr. 1126:10-12).

GeigTech has never provided any other computation of its patent damages, and it does not propose to do so now. Discovery on all issues – which went on for some years – closed well prior to the first trial. Lutron only had an opportunity to take damages discovery insofar as it related to Mr. Baliban's testimony, because no other computation of damages or method of doing so was proffered. GeigTech proffered no "either/or," so Lutron had no reason to take discovery into any other method of computing reasonable royalty damages. GeigTech made the choice to incorporate by reference Baliban's report, and nothing else, into its response to Lutron's damages interrogatory. That being so, Lutron did not have any reason or opportunity to retain its own expert to rebut any computation of damages other than the one provided by Baliban.

GeigTech's announced intention to abandon the only "computation" of damages it has ever provided, and instead to provide the jury with mountains of financial information and "let the jury

---

[7] In a particularly brazen assertion in its brief opposing Lutron's motion, GeigTech states that it complied with its discovery obligations when it "served an expert report opining on what the expert believed a reasonable royalty was based on the evidence produced in this case," (GeigTech Opposition Brief at 1), but that Mr. Baliban's number is also merely, "a computation that the statues [sic] states would be the minimum a patent owner would receive for infringement," (*id.* at 9), and that "no side believes that this is a $3 million dollar damages case," (*id.* at 11 n.8). But the Baliban Report did respond to Interrogatory No. 6, which simply asks, *in haec verba*, for the same information that Rule 26 compels GeigTech to disclose. At GeigTech's insistence – GeigTech's choice – Baliban's calculation was incorporated by reference into the Interrogatory Response. This means that GeigTech considered this case (insofar as patent damages are concerned) to be a $3.84 million damages case at all times prior to the close of discovery and during the trial of this action. It considered the case worth far more on its trade secret claims, but those were decided – and dismissed – by the court, not the jury.

decide" violates Fed. R. Civ. P. 26(a)(1)(A)(iii). "[B]y its very terms Rule 26(a) requires more than providing -- without any explanation -- undifferentiated financial statements; it requires a 'computation,' supported by documents." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006). GeigTech has expressly declined to provide any such "computation." GeigTech's "failure to comply with this requirement [is] especially troubling because . . . [Lutron] specifically requested a calculation of damages." *Id.* GeigTech provided only one such computation in a timely manner. It is, therefore, stuck with what it disclosed prior to the conclusion of discovery. It must rely on the disclosures it made prior to trial (supplemented with post-trial sales of Palladiom using the offending bracket, which Lutron has provided). It may not rely on some other computation, or on no computation at all.

## II. Preclusion of GeigTech's Alternate Method of Calculating Damages is the Appropriate Sanction

"A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37." *Design Strategy*, 469 F.3d at 294. In exercising that discretion, the district court should consider "(1) the party's explanation for the failure to comply with the disclosure obligation; (2) the importance of the . . . precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). While a showing of "bad faith" is not required for preclusion to be ordered under Rule 37(c), a party's bad faith "can be taken into account" by the Court in considering the party's explanation for its failure to satisfy its discovery obligations. *Scantibodies Lab'y, Inc. v. Church & Dwight Co.*, No. 14CV2275 (JGK) (DF), 2016 WL 11271874, at *34 (S.D.N.Y. Nov. 4, 2016), *report and recommendation adopted*, No. 14-CV-2275 (JGK), 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017) (quoting *Design Strategy*, 469 F.3d at 296). "Nevertheless, a court should not shrink from imposing

11

harsh sanctions where they are clearly warranted." *Lopez v. City of New York*, No. 05-CV-3624 ARR KAM, 2007 WL 2743733 at *7 (E.D.N.Y. Sept. 18, 2007) (quoting *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 735 (2d Cir. 1987) (internal citations omitted).

All four factors favor Lutron.

First, GeigTech has not explained why it failed to comply with its disclosure obligations. Instead, it argues that it *did* comply with its disclosure obligations, by offering the Baliban computation during expert discovery prior to the first trial, so it cannot be sanctioned for changing horses without any updated disclosure prior to the second trial.

But GeigTech is too clever by half. Rule 26 (and Rule 33, for that matter) do not go out the window just because we are on the second trial. When it declined the court's remittitur and committed itself to a retrial, GeigTech *immediately* became obligated to supplement its previous Rule 26 and interrogatory responses with any additional or revised "computation of any category of damages" it might try to seek – if only so that the court could rule on the propriety of that gambit. That obligation awaited no deadline; it arose automatically and needed to be complied with at once. And it could not be satisfied by disclosure at the eleventh hour.

Frankly, I do not believe for one minute that GeigTech decided to abandon its only disclosed computation of damages on October 31. Indeed, the only thing that makes sense is that GeigTech declined to accept remittitur in the amount it had told a jury was "not a penny more, not a penny less" than a reasonable royalty having already devised the scheme it is now pursuing. That scheme is not to retry the case using the only computation of damages Plaintiff had previously

disclosed, and not to reveal its intentions until it was far too late for anyone to do anything about it.

But if indeed this new course of action did not occur to GeigTech until the eve of trial, then its change of heart comes far too late. Lutron needed to be advised of GeigTech's intentions in time for it to alert the court that my stated expectation about the lack of any need for additional discovery or new experts was incorrect, owing to the prejudice Lutron would suffer if GeigTech were allowed to proceed on an undisclosed computation (indeed, on no computation whatsoever). GeigTech has played fast and loose, not only with its opponent, but with this court – behavior that smacks of bad faith.

Furthermore, GeigTech's Rule 26 and Rule 33 obligations mandated that it provide Lutron with a revised "computation" of damages, not with a revised "theory" of damages. This it has not done. Indeed, it has announced that it does not need to do so, arguing instead that its disclosures were "sufficiently specific that the [sic] [Lutron] has some basis to calculate the damages claimed against it." (GeigTech Opposition Brief at 3).[8]

But in the only case GeigTech cites on this point, the court found that plaintiffs' representation that they "'provided Defendants with exact copies of all documents necessary to compute, analyze, value, and quantify Plaintiffs' past economic harms' . . . fails to provide an adequate *computation* for the damages sought." *Stemrich v. Zabiyaka*, No. 1:12-CV-1409, 2013 WL 4080310, at *2 (M.D. Pa. Aug. 13, 2013). GeigTech cannot simply rain information down on the jurors' heads and leave them to come up with a royalty formula of their own. *See, e.g., Bos. Sci. Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1120 (N.D. Cal. Feb. 19, 2008); *National Presto Industries v. Black & Decker*, 760 F. Supp. 699, 701 (N.D. Ill. 1991). And GeigTech's

---

[8] I note that GeigTech has not explained how the *jury* is supposed to calculate a reasonable royalty, which is the only form of damages GeigTech is able to claim.

protestation that it does not need to prove damages through an expert is "supported" by wholly inapposite cases where the court deemed no expert testimony necessary because plaintiffs – unlike Mr. Geiger – were able to point to established royalty rates from prior licenses granted by the patentee or within the industry. *See, e.g., Dow Chem. Co.*, 341 F.3d, 1370 (Fed. Cir. 2003); *Bowling v. Hasbro, Inc.*, 582 F. Supp. 2d 192 (D.R.I. 2008). GeigTech has never licensed the patent and has offered no evidence of industry royalty rates, so those cases do not justify its planned *volte face*.

GeigTech claims to have complied with its discovery obligations by disclosing that, "There are many acceptable methods of calculating damages and a reasonable royalty." That is absurd. Rule 26 required GeigTech to provide a "computation" of each category of damages claimed, not to state that there are many ways to do it. Of course there are. But GeigTech had to pick a way to do it, and to disclose that way while discovery was open.

GeigTech eventually (and quite belatedly) did precisely what it was supposed to do, by filing Mr. Baliban's report. It is bound by its choice to seek that amount of damages, since it has not timely provided Lutron with any other computation of a reasonable royalty. Asking the jury to come up with a number out of whole cloth, with no guidance whatever, is not a "computation" of a reasonable royalty, and it was never disclosed as the way GeigTech would propose to have the jury calculate a reasonable royalty. This is not a negligence case, where the plaintiff is seeking pain and suffering damages that are by their nature amorphous (though supposedly quantifiable); Plaintiff is seeking economic damages in the form of a reasonable royalty, and it has to explain how such damages are to be calculated and in what amount. The fact that, in theory, it need not do so using an expert does not excuse Plaintiff from failing to provide a "computation" of the damages it purports to prove through other witnesses. And the fact that it chose, during discovery, to rely on

14

an expert – and to respond to interrogatories by incorporating by reference an expert's report – binds it now. It is far too late for GeigTech to change its mind.

Therefore, as far as this court is concerned, GeigTech has violated its obligations under both Rule 26 and Rule 33 by failing to provide critically important information about its proposed proof of damages until literally the eve of the retrial, and to do so without offering any "computation" of damages as required by Rule 26(a)(1)(A)(iii).

Moreover, GeigTech has failed to offer any acceptable justification for what it has done. GeigTech's argument that Lutron "failed to timely object" to the introduction of certain evidence at trial, (GeigTech Opposition Brief at 6), has nothing to do with its failure to live up to its Rule 26 obligations concerning its patent damages. Lutron did not object to the introduction of evidence about Savant or Snowy Owl at the first trial because it was highly relevant to issues other than damages – most notably willfulness, for example, as well as certain trade secret issues that were the province of the court, not the jury. Therefore, there would have been no basis for Lutron to object to its introduction.

But that is irrelevant to the present Rule 37 motion. GeigTech did not timely announce, per Rule 26 (or for that matter, Rule 33) that it intended to have the jury calculate a reasonable royalty based on anticipated profits from the Savant deal, or any other "lost profits." That, and nothing else, is what is being decided here.

The rest of GeigTech's arguments that it did not violate Rules 26 and 33 are so lacking in merit that they do not warrant discussion.

Second, the matter at issue is of critical importance, because the evidence at issue is about damages – the only thing that remains to be tried in this case. "To permit entirely unexplained Rule 26 violations to go unsanctioned whenever the evidence at issue is sufficiently important would

give parties the perverse incentive to spring especially large and surprising disclosures on their adversaries on the eve of trial—an extreme version of the 'sandbagging' that Rule 26 attempts to avoid." *Agence France Presse v. Morel*, 293 F.R.D. 682, 687. That Lutron and this court should be so sandbagged is unconscionable.

 Third, Lutron would also be severely prejudiced in going to trial on GeigTech's alternate approach because, "Unaware of the damage theory Plaintiff is newly asserting now, Defendants would have had no reason to conduct discovery sufficient to defend against that theory." *Agence France*, 293 F.R.D. at 686. GeigTech's claim that Lutron faced no prejudice in its ability to test this alternate approach is breathtaking, and I do not credit its arguments that (i) Lutron had ample opportunity to take discovery on a damages approach it had no reason to anticipate and (ii) Lutron could have briefed the issue over the past few days of expedited motion practice. (*See* GeigTech Opposition Brief at 10-11). Most significantly, Lutron, relying on GeigTech's disclosure of the Baliban computation of reasonable royalty damages, did not ask an expert to rebut any other method of computing damages; and with expert disclosure and discovery long since closed, it has no opportunity to do so now. GeigTech cannot hide behind the court's August 20 order decreeing no new experts or discovery to justify its failure to disclose; it is precisely because Lutron and the court were not advised of the possibility of a change of course on damages that Lutron had no opportunity to assess the propriety of GeigTech's plan and to ask the court to reconsider that order in light of changed circumstances.

 "Weighing heavily on both the prejudice and possibility of continuance is the fact that discovery has been closed" for years. *Pilitz v. Inc. Vill. of Freeport*, No. 12-CV-5655(JS)(ARL), 2020 WL 6945927, at *4 (E.D.N.Y. Nov. 25, 2020); *see also Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09 CIV. 3698 LAP, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010). GeigTech made

its play for a new damages approach (one accompanied by no computation of those damages) on the eve of a retrial that was occasioned by its refusal to accept the court's remittitur – a remittitur in the exact amount to which it told the jury it was entitled, "not a penny more, not a penny less." It altered its approach knowing that the court had ruled that there could be no new experts and no new expert discovery. That is sandbagging in the extreme.

      Finally there is no reason for any continuance and there will be none. The first of the three cases that make up this matter was filed in 2018. We have already had one thirteen-day jury trial in the matter. And there remains the inevitability (unless GeigTech refuses to offer any evidence on damages) of yet another round of post-trial motions, not the least of which is GeigTech's anticipated renewal of its request for enhanced damages in light of the jury's finding of willful infringement. The court already has a number of important matters scheduled for trial in the new year, which would necessarily delay the resolution of this case for an unconscionable length of time. And of course the court has already called in jurors for a trial to commence next Monday. One might view the matter somewhat differently if GeigTech had timely sought relief from the court's August 20 order by revealing its desire to pursue a different damages approach at a time when the court might have been in a position to consider the propriety of the request and deal with its implications. But it did not do so. Instead, it chose instead to keep me as well as Lutron in the dark. That is quite enough of a reason to conclude that a continuance would be unwarranted.

      In other words, all four factors favor the imposition of sanctions against GeigTech. Lutron's motion is, therefore, granted. At the November 18 retrial on damages, GeigTech will be precluded from offering evidence in support of any computation of damages that was not disclosed in its Rule 26 and interrogatory responses prior to the first trial – which is to say, in the Baliban Report, since that was the only such computation of damages ever offered in response to Rules 26 and 33.

This comports with Federal Circuit precedent holding that a district court may exclude "non-expert damages theories for failure to supplement discovery interrogatories." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1356 (Fed. Cir. 2005).

Of course, evidentiary rulings like the one in *MicroStrategy* can leave plaintiffs "with little evidence of damages." *Id*. at 1354. As my former colleague Judge Holwell articulated in a case in which he precluded Plaintiff from offering *any* evidence of damages, "The Court hesitates to impose this remedy because the majority of the burden will be felt by [the plaintiff], while it appears that much of the fault lies with [the] attorney[s]. When a client hires an attorney, she put herself in his hands and relies upon his counsel with regards to the mechanics of litigating a suit." *Ellis v. Asset Prot. & Sec. Servs., LP*, No. 09 CIV. 6555 RJH, 2011 WL 4472331, at *2 (S.D.N.Y. Sept. 27, 2011).

Counsel for GeigTech took a tremendous risk with GeigTech's fortunes here by rejecting the remittitur in favor of a secret plan to "prove" damages in a manner not disclosed during discovery – especially as the court awarded their client all the damages it sought at the first trial, with the possibility that that number might be enhanced, not by a runaway jury, but by a court charged with determining whether the jury's finding of willful infringement justified a larger award. Given the very real possibility that the court would have had to direct a verdict of $1 in damages if GeigTech had tried its alternative method of "proving" them – especially in light of cases like *Bos. Sci. Corp.*, 550 F. Supp. 2d at 1120 – the sanction imposed may well prove better for GeigTech than going to trial on the approach its lawyers disclosed at the last second.

I say this because, unlike some plaintiffs, the sanction does not leave GeigTech without any means of proving damages. The Second Circuit has expressed a strong preference for deciding cases on the merits, rather than through default or discovery sanctions. *See Marfia v. T.C. Ziraat*

*Bankasi, New York Branch*, 100 F.3d 243, 249 (2d Cir. 1996) (collecting cases). GeigTech has a qualified expert waiting in the wings who has already come up with a computation of damages, one that was previously disclosed to Lutron, and on which GeigTech relied on both during a jury trial and in post-trial motions. Although counsel for GeigTech left Mr. Baliban off Plaintiff's final witness list (FPTC Tr. 61:14-15), I will, in light of this ruling, permit GeigTech to change its mind and call him next week (no continuances, however). And of course, GeigTech can update Mr. Baliban's calculations with evidence of sales subsequent to the first trial. But it cannot walk back the cat and start over again using any other computation of damages – or, as it proposes to do, no computation at all.

## CONCLUSION

GeigTech is precluded from "proving" damages by "put[ting] the evidence on, giv[ing] the facts . . . and let[ting] the jury decide what it is." (FPTC Tr. 11-14-18).

Since the parties' exhibits lists are now out of date, both sides must appear in Courtroom 24A on Thursday, November 14 at 2 PM to continue our final pre-trial conference. You will have two hours of my time (and you may have to wait, since I have oral argument on an appeal in the Purdue Pharma bankruptcy case also scheduled on that day). I have decided that, given the narrow scope of the trial, each side will be limited to 50 exhibits, so choose carefully. Of course any exhibits on which the experts have relied will be fair game for cross examination. I have already ruled that no exhibits pertaining to Snowy Owl will be admitted because they go to willfulness, which is now the province of the court, not the jury. Further, since GeigTech "no longer seek[s] damages based on a calculation of lost profits, instead seeking damages based only on a reasonable royalty," exhibits pertaining to lost profits are "no longer relevant, would be confusing to the jury

and a waste of time." *Island Intell. Prop. LLC v. Deutsche Bank AG*, No. 09 CIV. 2675 KBF, 2012 WL 526722, at *3 (S.D.N.Y. Feb. 14, 2012).

The motion for sanctions is GRANTED. If the Clerk has docketed Lutron's brief at Docket No. 565 as a motion (which the court has deemed it), he is directed to remove that motion from the court's list of open motions.

## ADDENDUM

On November 11, 2024, GeigTech moved for reconsideration of this court's decision on the issue of a new trial on damages. (Dkt. # 569). The court filed that decision on July 30, 2024. Pursuant to Local Rule 6.3 of this court, a litigant who seeks reconsideration must file his motion within 14 days after entry of the court's original decision. GeigTech's motion is, therefore, untimely. It is also utterly lacking in merit – and demonstrates GeigTech's (or counsel's) desperation in the face of the fact that its gambit regarding patent damages has failed. I have directed Lutron not to bother responding to the motion in the hope of avoiding yet another sanctions motion – for Lutron would certainly be entitled to recompense for any amount expended in opposing this particular request.

The motion for reconsideration is DENIED. The Clerk of Court is directed to terminate the motion at Docket No. 569.

This is a written decision.

Dated: November 12, 2024

_____
U.S.D.J.

BY ECF TO ALL COUNSEL